[No. F016529. Fifth Dist. June 4, 1993.]

KENNETH KOVACEVICH, Plaintiff and Appellant, v.
McKINNEY & WAINWRIGHT et al., Defendants and Respondents.

338

**COUNSEL**

Michael S. Konnoff for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Lawrence E. Wayte and David H. Bent for Defendants and Respondents.

## OPINION

**STONE (W. A.), Acting P. J.**—Kenneth Kovacevich appeals from a judgment entered in favor of defendants McKinney & Wainwright et al. (respondents) following a July 15, 1991, order granting respondents' motion for nonsuit. In a bifurcated trial, the court determined the provisions of Code of Civil Procedure[1] section 340.6 barred Kovacevich's March 4, 1986, action for damages for legal malpractice.

■    Under section 340.6, the one-year statute of limitations for legal malpractice does not begin to run until a plaintiff knows of the attorney's negligence *and* sustains actual and appreciable harm.[2] (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Sirott* v. *Latts* (1992) 6 Cal.App.4th 923, 928 [8 Cal.Rptr.2d 206].) There is no apparent dispute about when Kovacevich "discovered" respondents' alleged malpractice that eventually led to a lawsuit against Kovacevich by Wells Fargo Bank and a $927,390.73 summary judgment in favor of the bank. Here, as in other recently reported cases, the question is, when did Kovacevich sustain actual damages sufficient to trigger the running of the statute? Respondents maintain it was the date Kovacevich retained counsel to represent him in the underlying Wells Fargo action and he began to incur attorney fees (to wit, Dec. 14, 1984). Kovacevich maintains he did not suffer "actual and irremedial damage" within the meaning of the statute on that date because his insurance carrier, Cal-Farm Insurance Company, paid in full his attorney fees in the Wells Fargo action. He maintains he did not suffer actual damage until summary judgment was entered against him in the underlying Wells Fargo action on June 14, 1985; therefore, he reasons, his March 1986 malpractice action was filed timely.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]Section 340.6 states in part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; . . ."

*The Underlying Action*

The relevant facts are these: In 1981 respondent Russell R. McKinney, a Visalia attorney, and others solicited Kovacevich, a Delano farmer, to participate in the promotion and organization of a new bank in Delano. The group of 19 organizers entered into a joint venture in this regard in 1982 known as the Delano Organizers. The United States Comptroller of the Currency (the Comptroller) issued preliminary approval for a bank charter in the name of InterAmerica National Bank (in organization) on November 5, 1982. Kovacevich became 1 of the 10 members (selected from the 19 organizers) of the InterAmerica interim board of directors.

Wells Fargo extended InterAmerica two lines of credit in the approximate total amount of $1 million; Wells Fargo required each of the interim directors sign continuing personal guaranties for the notes securing the lines of credit. Kovacevich executed two such guaranties: one on February 4, 1983, in the amount of $850,000, and the other upon renewal and increase of the line of credit on October 1, 1983, in the amount of $950,000.

The Comptroller revoked InterAmerica's preliminary charter in 1984; this prevented further sale of the bank stock, the proceeds from which would have provided the capital to eliminate the personal guaranties. By the fall of 1984 the Wells Fargo notes were in default; the debt owed to the bank was approximately $943,727.15, plus accrued interest. Wells Fargo filed a complaint against InterAmerica and all of its organizers in San Mateo County Superior Court on November 21, 1984, seeking damages for breach of the line of credit notes and for breach of the continuing guaranties.

After Wells Fargo served Kovacevich with summons and complaint, he consulted in early December with Attorney Self who examined the pertinent documents. On December 14, 1984, Attorney Self explained to Kovacevich the joint and several liability that flowed from his continuing personal guaranties and the fact organizers who were not interim directors were not liable for the Wells Fargo notes because they had not executed personal guaranties.[3] On December 14, 1984, Cal-Farm agreed to pay Attorney Self's

---

[3] In his later-filed first amended complaint, Kovacevich alleged malpractice by the respondent law firm for (1) negligent and incomplete information and advice pertaining to the legal import of a continuing personal guaranty and the proportionate liability of all the organizers on the Wells Fargo notes, and (2) failure to obtain contribution agreements from the organizers not liable under the Wells Fargo notes.

fees incurred on behalf of the defendants in the Wells Fargo action, including Kovacevich, until such time as outside counsel could render a decision regarding Cal-Farm's responsibility for such fees.[4]

Wells Fargo obtained a writ of attachment against Kovacevich's land holdings in Tulare County on March 28, 1985. Wells Fargo selected Kovacevich as its "target defendant" and moved for summary judgment on the causes of action alleged against him. The San Mateo County Superior Court granted Wells Fargo summary judgment against Kovacevich only on June 14, 1985, in the sum of $927,390.73. Kovacevich borrowed funds in July 1985 in order to satisfy the Wells Fargo judgment.[5] He thereafter filed an action against his fellow organizers in Fresno County on August 14, 1985, and obtained partial reimbursement by settlement in July 1990.

*The Instant Action*

While the Fresno action against his fellow organizers was pending, Kovacevich filed the instant action in propria persona against respondents for legal malpractice in Ventura County on March 4, 1986. Kovacevich later retained and substituted counsel; the Ventura court transferred the action to Tulare County for resolution.

*Motion for Summary Judgment*

Respondents moved for summary judgment on May 16, 1991,[6] contending the statute of limitations set out in section 340.6 barred the action. The trial court denied the motion, ruling a question of fact existed whether Kovacevich suffered "actual harm" when he first incurred attorney fees as a result of the Wells Fargo action.

*Bifurcated Trial*

On the date scheduled for jury trial, the court ascertained it was Kovacevich's intention to rely upon the facts and affidavits set forth in his

---

[4]Cal-Farm insured Kovacevich "under a farmowners and fleet policy with a Farm & Ranch Umbrella coverage as well as a general liability policy covering Mr. Kovacevich and the organizing committee."

[5]Kovacevich and Wells Fargo arrived at a settlement wherein Kovacevich, in essence, purchased Wells Fargo's position against all defendants in the San Mateo action for $980,000 and took an assignment of Wells Fargo's rights against the other defendants in that action. On Kovacevich's motion, the court later dismissed the San Mateo action without prejudice. Kovacevich sought dismissal in anticipation of filing an action in Fresno County against the other 18 InterAmerica organizers.

[6]The parties had stipulated to waive the five-year statute (§ 583.310) to the trial date of July 15, 1991.

opposition to respondents' motion for summary judgment in a trial of the special defense that the action was barred by the statute of limitations (§ 340.6). The court bifurcated the issue of the limitations period, deemed the affidavits and moving papers filed by Kovacevich in opposition to the motion for summary judgment to be his opening statement on the bifurcated issue, assumed that such facts and statements could be proved and proceeded to grant a nonsuit in favor of respondents. (§ 597.)

The court reasoned as follows: Kovacevich maintained he sustained the alleged injury either when he signed the continuing guaranties without being informed by respondents regarding liability created by those documents or when he was not informed that certain of the other organizers, not members of the provisional board of directors, had failed to execute such guaranties. Based upon those contentions, the court opined Kovacevich sustained injury "immediately upon signing a guarantee"—an argument the court acknowledged was not urged by either party. The court further reasoned even if injury had not occurred at that point, it occurred upon default of the Wells Fargo obligation (Sept. 30, 1984) and the commencement of and service of summons in the Wells Fargo action against Kovacevich. At that point Kovacevich was compelled to incur attorney fees and to engage Attorney Self to represent him on December 14, 1984. Thus, the court concluded, Kovacevich sustained actual injury within the meaning of the statute no later than December 14, 1984, and the legal malpractice action filed March 4, 1986, was barred by the passage of time.

### Laird v. Blacker

The California Supreme Court has recently spoken to the issue of the commencement of the statute of limitations in legal malpractice actions. (*Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 69].) There, defendants represented plaintiff in an underlying action that was dismissed on October 20, 1981, for lack of prosecution. Plaintiff proceeded in propria persona to file a notice of appeal on December 7, 1981. Plaintiff voluntarily dismissed the appeal on September 15, 1982, and on May 17, 1983, filed the legal malpractice action. (*Id.* at p. 610.) Following a jury verdict in favor of plaintiff, defendants appealed. The Court of Appeal reversed and directed judgment be entered in favor of defendants on the ground the malpractice action was barred by the statute of limitations (§ 340.6). The Supreme Court affirmed, rejected plaintiff's argument that the limitations period was tolled until her appeal of right was dismissed (2 Cal.4th at p. 615) and held "[p]laintiff . . . sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal." (*Id.* at p. 615.)

In so holding, the *Laird* court discussed and rejected the strict "occurrence rule" upon which the trial court here apparently relied (a cause of action accrues on the date on which the malpractice occurred) and the "irremediable damage" rule initially cited by Kovacevich (the cause of action accrued when he *paid* the underlying Wells Fargo judgment). (*Laird* v. *Blacker*, *supra*, 2 Cal.4th at pp. 611-612.)

## DISCUSSION

In *Laird*, the Supreme Court acknowledged the statute of limitations for legal malpractice commences when the client discovers, or should have discovered, the cause of action and suffers actual harm. It further recognized the applicable limitations period is tolled until the client sustains "actual injury." (*Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 609.) ■ In his attempt to establish actual injury on the date judgment was entered against him in the Wells Fargo action, Kovacevich relies upon the Supreme Court's language that "the limitations period of section 340.6 commences when a client suffers an adverse judgment or order of dismissal in the underlying action on which the malpractice action is based." (*Id.* at p. 609.) But unlike *Laird*, in which attorney fees arising out of the alleged malpractice were not generated until *after* the underlying action was dismissed and plaintiff appealed, here, actual damages in the form of attorney fees were incurred beginning in December 1984, *prior* to the entry of the adverse summary judgment in the underlying action on June 14, 1985. By using the term "actual" injury in the language of the statute, the Legislature focused on the *fact* that some actual damage had occurred. (*Id.* at p. 613.) Here, it is a fact attorney fees were incurred no later than December 12, 1984.

Prior to *Laird*, Kovacevich argued in the trial court that when he retained Attorney Self in the Wells Fargo action, Cal-Farm advised Attorney Self it would pay his "reasonable attorneys fees and expenses" until such time as outside counsel could render a decision "with respect to coverage." According to Kovacevich's declaration filed in opposition to the motion for summary judgment, it was not until after July 1985 that he began to incur attorney fees personally. Prior to that date, Cal-Farm paid all attorney fees in connection with his defense of the Wells Fargo action against him and the other organizers. Thus, he argued, he did not "incur or pay" attorney fees until after July 1985.[7]

Respondents maintain who actually paid the attorney fees is not critical in assessing when actual injury occurred, contending the fact the charges were

---

[7]As of the date of Kovacevich's deposition on April 12, 1991, Cal-Farm had paid $71,627.74 of the approximate total of $300,000 in legal fees Kovacevich owed to Attorney Self, generated, inter alia, by the defense of the Wells Fargo action *and* prosecution of the Fresno and Tulare County actions.

incurred by and billed to Kovacevich triggers the running of the statute. The recent case of *Sirott* v. *Latts, supra,* 6 Cal.App.4th at pages 928-929, acknowledges "[a] client suffers damage when he is compelled, as a result of the attorney's error, to incur or pay attorney fees. (*Budd* v. *Nixen, supra,* 6 Cal.3d at pp. 201-202.)"

Self's attorney fees generated in December 1984 were billed *to Kovacevich* on January 14, 1985, and paid to Kovacevich and Self, jointly, by Cal-Farm on February 28, 1985. Following review of the legislative history of section 340.6 set out in *Laird* v. *Blacker, supra,* 2 Cal.4th at page 618, it is inconceivable the Legislature intended that the date of actual injury in a legal malpractice action depend upon whether a plaintiff has pertinent liability insurance coverage. There is no indication in extant case law that a distinction in establishing the date of actual injury should be drawn simply because attorney fees were paid personally or by an insurer.

Indeed, an artificial distinction based on when, if ever, a person began to pay, as opposed to incur, attorney fees would be at odds with the "legislative goal of resolving cases while evidence is fresh, witnesses are available, and memories have not faded. . . ." (*Laird* v. *Blacker, supra,* 2 Cal.4th at p. 618.) Such a distinction would raise further questions: Would a determination have to be made whether the policyholder was responsible for payment of a deductible? If so, would payment of a deductible be treated as "actual injury" for purposes of triggering the statute? Even if there was no deductible payment required, would the claim trigger an adverse impact on the amount of premium required to renew the policy at a later date, and if so, would that increased premium constitute actual injury at the time of the claim or at the time of renewal?

Significantly, the recent cases do not require *payment* of attorney fees to demonstrate actual injury: *Laird* speaks in terms of when the plaintiff "was compelled to *incur* legal costs and expenditures in pursuing an appeal" (*Laird* v. *Blacker, supra,* 2 Cal.4th at p. 615, italics added); *Sirott* focuses actual injury on the point the client is compelled "to *incur or pay* attorney fees." (*Sirott* v. *Latts, supra,* 6 Cal.App.4th at p. 928, italics added.)

Kovacevich's injury as a result of the alleged legal malpractice occurred when he was compelled to incur attorney fees in defense of the Wells Fargo action in December 1984—several months in advance of the adverse judgment in the underlying action. Section 340.6 barred the March 4, 1986, malpractice action.

Although the trial court's primary stated reason for granting summary judgment was in error, the court nevertheless reached the correct result. (*Sam*

*Andrews' Sons* v. *Agricultural Labor Relations Bd.* (1988) 47 Cal.3d 157, 176 [253 Cal.Rptr. 30, 763 P.2d 881].)

## DISPOSITION

Judgment affirmed. Costs on appeal to respondents.

Ardaiz, J., and Dibiaso, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 30, 1993.