[No. S036386. Dec. 28, 1994.]

ITT SMALL BUSINESS FINANCE CORPORATION, Plaintiff and Appellant, v.
EDWARD I. NILES, Defendant and Respondent.

## COUNSEL

Carrick & Dale, George D. Dale, Donald J. Aberbook, David T. Hayek, LeBouef, Lamb, Greene & MacRae, John W. Cotton and Vincent J. Davitt for Plaintiff and Appellant.

Brandon & Rhin, Dennis W. Rhin, David L. Brandon, Meyers, Bianchi & McConnell and Martin E. Pulverman for Defendant and Respondent.

## OPINION

LUCAS, C. J.—This is a professional negligence action brought against an attorney, defendant Edward I. Niles, based on Niles's alleged failure to exercise reasonable care in preparation of loan documents for plaintiff ITT Small Business Finance Corporation (hereafter ITT). Although Niles prevailed on summary judgment after the trial court concluded that the action was time barred, ITT persuaded the Court of Appeal to reinstate its cause of action. We now consider the narrow issue whether ITT suffered "actual injury" under the one-year statute of limitations for attorney malpractice actions (Code Civ. Proc., § 340.6; all statutory references are to the Code of Civil Procedure unless otherwise indicated) when ITT (i) incurred legal fees defending a third party action that disputed the adequacy of the loan documents, or (ii) received substantially less in settlement from its debtor than ITT contemplated under its security agreement. Section 340.6 provides that legal malpractice actions shall commence running when the client discovers or should have discovered the facts constituting the malpractice, but the statute is tolled under section 340.6, subdivision (a)(1), during the time, inter alia, the client "has not sustained actual injury." Applying section 340.6 to the facts of this case, we conclude ITT's action was timely filed. We therefore affirm the judgment of the Court of Appeal.

### FACTS

In December 1984, ITT retained Niles to prepare a promissory note and certain loan documents in connection with the closing of ITT's $200,000 loan to California Solution, Inc. (hereafter debtor), not a party to this action. The documents granted ITT a first security interest in machinery, equipment, furniture, fixtures, inventory, accounts receivable, and leasehold improvements in exchange for a $200,000 loan to debtor. In addition, the agreement granted ITT second liens on three pieces of real property and a pledge of certain stock as collateral securing the guaranty.

On February 16, 1988, debtor filed for bankruptcy. On February 14, 1990, debtor filed an adversary proceeding (in effect to avoid ITT's lien on its property) against ITT in United States Bankruptcy Court to contest inadequacies in the loan documents prepared by Niles on ITT's behalf. ITT retained independent counsel to represent it and defended the adequacy of the loan documentation during the adversary proceeding, claiming it was

sufficient to protect debtor's interests. At the same time ITT was defending the documentation in the adversary proceeding, it informed Niles that it expected him to indemnify ITT for any losses suffered due to negligent preparation of the loan documents. ITT also advised Niles to contact his malpractice insurer.

On January 28, 1992, almost two years after commencement of the adversary proceeding, ITT entered into a settlement with debtor under which it accepted an amount less than the full value of its security. On March 16, 1992, over two years after the commencement of the adversary proceeding, but only two months after signing the settlement agreement, ITT filed its claim of professional negligence against Niles, asserting that it was compelled to enter into the settlement agreement with debtor for an amount less than the value of its security because Niles had negligently prepared the loan documents.

On May 5, 1992, Niles filed a demurrer to ITT's complaint on the ground that the malpractice claim was time barred under section 340.6, because it was filed over two years after ITT discovered the alleged substandard nature of the loan documents and incurred legal fees defending those documents in the adversary proceeding. The demurrer was overruled, but two months later the trial court granted Niles's motion for summary judgment under section 340.6.

The Court of Appeal reversed summary judgment in favor of Niles after concluding that the statute of limitations in "transactional malpractice" cases must commence on settlement or trial court judgment of the third party action involving the documents. We granted review to resolve a perceived conflict over the statute of limitations issue, and our review of cases interpreting section 340.6 leads us to affirm the Court of Appeal judgment.

DISCUSSION

1. *Section 340.6*

Section 340.6 provides in pertinent part that "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a); hereafter section 340.6 (a).) There are four exceptions that toll the limitations period, including a provision tolling the

statute while "[t]he plaintiff has not sustained actual injury." (§ 340.6, subd. (a)(1); hereafter section 340.6 (a)(1).) That provision is the focus of this appeal.

■ Under section 340.6, a malpractice action accrues once a former client "discovers" the malpractice, and is tolled until the client suffers "actual injury" from the malpractice. There must be a nexus between the discovery and the harm, and without both elements the filing of the malpractice action is premature. Thus, discovery of the facts essential to the malpractice claim *and* the suffering of actual harm from the malpractice establish a cause of action and begin the running of the statute of limitations. (§ 340.6 (a)(1).)

Recently, in *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691] (hereafter *Laird*), we addressed the issue whether the statute of limitations of section 340.6 is tolled during the time a legal malpractice plaintiff appeals from the underlying judgment on which the malpractice claim is based, or instead commences on entry of the adverse judgment or final order of dismissal. (*Laird, supra,* 2 Cal.4th at p. 615.) We concluded that because the focus of a legal malpractice action involving negligence that occurs in the handling of a client's litigation is the attorney's *conduct* in the underlying case, the statute of limitations should commence "on entry of adverse judgment or final order." (*Ibid.*) In so holding, we recognized that "success on appeal or proof of the total amount of monetary damages suffered by the former client . . . does not negate an action for legal malpractice." (*Id.,* at p. 614.) We emphasized in *Laird* that the focus of the limitations period is on the fact of damage or actual harm giving rise to a cause of action in negligence, not the amount of damage, and disapproved language from earlier cases implying that actual harm may always occur at the point the client initially suffers monetary damage, including attorney fees, as a result of the negligence. (*Id.,* at p. 612 [warning litigants against literal interpretation of similar language in *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200-201 [98 Cal.Rptr. 849, 491 P.2d 433].) We also disapproved cases that held "actual injury" did not occur until the negligent attorney's error became "irremediable," noting that the irremediable damage rule had been rejected by the Legislature when it adopted section 340.6. (*Laird, supra,* 2 Cal.4th at p. 617.)

Since *Laird,* several Courts of Appeal have struggled with the question of when "actual injury" occurs under section 340.6 (a)(1) in cases involving "transactional malpractice," or malpractice that is based on the negligent preparation of documents that causes the client harm. This is an issue separate from that addressed in *Laird,* but one subject to analogous reasoning. Unlike the *Laird* plaintiff, who sought to toll the statute of limitations

during the pendency of an *appeal* of an adverse judgment caused by her former attorney's negligent representation, the plaintiff here seeks to toll the statute of limitations while the adequacy of the documents that formed the basis of the transaction is initially litigated. In other words, plaintiff is claiming that actual injury does not occur until judgment or settlement of the transactional litigation.

In reversing summary judgment in favor of Niles, the Court of Appeal concluded ITT did not suffer "actual injury" until January 28, 1992, when it was forced to accept an adverse settlement with debtor at the trial court level in the adversary proceedings. Although ITT incurred attorney fees in defending the loan documentation, the nexus between the discovery of malpractice and "actual injury" that is required before a cause of action for legal malpractice will accrue did not occur until settlement of the adversary proceeding. Had ITT prevailed in the adversary proceeding, it would have suffered no "actual injury" from the initial attorney's preparation of the loan documents, just as the plaintiff in *Laird* suffered no "actual injury" until the moment the trial court dismissed her complaint. Guided by these principles, the Court of Appeal concluded that the statute of limitations under section 340.6 commenced on final settlement of the adversary proceeding.

2. *Actual Injury*

▮▮ Niles contends that the better rule in transactional malpractice cases is stated in several Court of Appeal cases concluding that "actual injury" under section 340.6 (a)(1) occurs when the former client as plaintiff incurs attorney fees either in defending the adequacy of the documentation in the third party action or in defending its reliance on the allegedly negligent attorney in that action. Once attorney fees have been incurred, asserts Niles, the former client has *discovered* the fact of damage that triggers the running of the limitations period of section 340.6. Niles relies on several appellate cases to support his contention, including *Sirott* v. *Latts* (1992) 6 Cal.App.4th 923 [8 Cal.Rptr.2d 206] (hereafter *Sirott*), *Johnson* v. *Sionelli* (1991) 231 Cal.App.3d 105 [282 Cal.Rptr.2d 205] (hereafter *Johnson*), *Kovacevich* v. *McKinney & Wainwright* (1993) 16 Cal.App.4th 337 [19 Cal.Rptr.2d 692] (hereafter *Kovacevich*), and *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837] (hereafter *Hensley*). As the Court of Appeal below observed, however, these cases were either wrongly decided, can be distinguished from the present case or are consistent with it.

In *Sirott, supra*, 6 Cal.App.4th 923, defendant attorneys negligently advised the plaintiff, a physician, that he did not have to purchase a specific type of specialized medical malpractice insurance. The plaintiff was later

sued for medical negligence and, as of January 1988, had incurred legal fees in an amount less than the $50,000 premiums he would have paid had he purchased the specific malpractice insurance. The physician's attempt to reinstate his insurance was unsuccessful: an arbitrator held that the insurer was not obligated to defend or indemnify plaintiff in the medical malpractice action. A judgment confirming the arbitration award was entered in January 1988. Because he had no insurance coverage, the physician was forced to defend and settle the malpractice claim against him at his own expense. Over two years later, in January 1990, the physician sued the attorneys who advised him not to purchase the malpractice insurance. The Court of Appeal affirmed the trial court's judgment sustaining defendants' demurrer based on section 340.6, on the ground that plaintiff sustained actual damage as a result of the attorneys' malpractice on entry of the judgment confirming the arbitration award in January 1988. It was at this point, the court reasoned, that it was *"judicially determined* that plaintiff was not entitled to [the specialized] malpractice insurance coverage, and he was compelled to pay the expenses of defending the medical malpractice action regardless of the outcome of that action." (*Sirott, supra,* 6 Cal.App.4th at pp. 929-930, italics added.)

Relying on *Sirott,* Niles asserts that ITT suffered "actual injury" when it was forced to incur legal fees in order to defend the negligently prepared documents in the adversary proceeding. As plaintiff observes, however, Niles ignores a key factor in that case. In *Sirott,* if the plaintiff had been successful at the arbitration regarding his insurance coverage, the advice rendered by the attorney would have been correct, and no actionable malpractice would have been committed. The resolution of the arbitration necessarily included a determination regarding the attorney's advice. Therefore, the *Sirott* court correctly concluded that the physician's cause of action for legal malpractice accrued on entry of the adverse judgment of arbitration. The *Sirott* court did not hold that the legal fees incurred in litigating the arbitration proceeding itself represented sufficient "actual injury." The legal malpractice action was held to *accrue* once the arbitration judgment was entered.

In the present case, the adversary proceeding is analogous to the arbitration in *Sirott.* Here, there was no indication the attorney's alleged negligent preparation of documents would cause ITT loss until it was forced to settle on adverse terms with its debtor. ITT incurred legal fees in defending its former attorney's actions in negligently drafting the loan documents, just as the doctor in *Sirott* incurred legal fees in defending his attorney's advice during the coverage dispute eventually resolved against him in the arbitration proceeding. As in *Sirott,* these initial legal fees incurred by ITT were not

sufficient "actual injury" within the meaning of section 340.6(a)(1) because at the time the proceeding was filed and ITT hired counsel to defend the loan documentation, there was no actual harm attributable to malpractice. The statute of limitations remained tolled until ITT suffered an actual loss attributable to its attorney's alleged malpractice, that is, when it was forced to accept an unfavorable settlement of the adversary proceeding.

Niles also relies on *Johnson, supra*, 231 Cal.App.3d 105, in which the court held the former client suffered "actual injury" under section 340.6 (a)(1) when buyers defaulted on a promissory note that was secured by inadequate and defective collateral. The promissory note had been prepared by the former attorney. The *Johnson* court reasoned that the inadequate security created a potential for injury that was realized once the buyers defaulted on the promissory note. The court stated: "Hence, at the time of default on the note if the security was adequate, plaintiff had no cause of action; if the security was inadequate actual injury occurred and the statute of limitations commenced running." (*Johnson, supra*, 231 Cal.App.3d at p. 110.) Because the buyers defaulted on the note in July 1983, more than one year prior to the filing of the malpractice action in December 1985, the *Johnson* court concluded the action was barred by section 340.6. (*Johnson, supra*, 231 Cal.App.3d at p. 110.)

In our view, the *Johnson* court erred in determining that actual injury occurred when the buyers defaulted on the promissory note in July 1983. In *Johnson*, the plaintiff was injured not by the promissory note itself; rather he was injured by the inadequacy of the collateral securing the note. Thus, the plaintiff suffered actual injury in *Johnson* at the time of the sale of the collateral for less than the balance due on the note in June 1984. (*Johnson, supra*, 231 Cal.App.3d at p. 108.) Because the sale of collateral occurred more than one year prior to the filing of his complaint for legal malpractice in December 1985, the action was time barred by the limitations period of section 340.6. To the extent the *Johnson* court analysis is inconsistent with our analysis herein, it is disapproved.

Niles's reliance on *Kovacevich, supra*, 16 Cal.App.4th 337, is also misplaced. There, Kovacevich was an investor in a joint venture and member of an organizing committee formed to establish a bank. On the advice of his counsel, Kovacevich signed a personal guaranty for notes securing the lines of credit to establish the new bank. After the new bank defaulted on the notes, the lending institution filed a complaint against the bank and its investors, seeking damages for breach of the line of credit notes and for breach of the continuing guaranties. In December 1984, when Kovacevich was served with the lending institution's action, he hired independent counsel, not to challenge the claim that he was personally liable on the notes, but

to mitigate his losses by arranging matters so that he could sue some of his fellow investors and the original lawyers as well. This new counsel advised Kovacevich that his original attorneys had given him negligent advice pertaining to the legal import of a continuing personal guaranty and to the liability of the other organizers on the notes, and had failed to obtain contribution agreements from the organizers who were not liable under the notes.

Cal-Farm Insurance Company insured Kovacevich under a general liability policy covering the investors. The insurer agreed to pay Kovacevich's new attorney. The lending institution selected Kovacevich as its "target defendant," obtained a writ of attachment against his land holdings and later, in June 1985, obtained summary judgment against him in the sum of $927,000. Kovacevich paid the judgment and in March 1986, filed a legal malpractice action against his original counsel based on counsel's failure to give Kovacevich adequate legal advice and failure to obtain contribution agreements.

The *Kovacevich* court affirmed summary judgment against Kovacevich on the ground that the statute of limitations for the legal malpractice action barred the suit. The court determined that Kovacevich suffered "actual injury" under section 340.6 (a)(1) when he incurred legal fees after hiring the second law firm to mitigate the harm caused by the original malpractice, because that was the point when Kovacevich accepted the adverse position in which his former counsel had placed him. We conclude the *Kovacevich* court erred and its holding should be disapproved. In our view, Kovacevich did not suffer "actual injury" within the meaning of section 340.6 until June 1985, when summary judgment was entered against him. As the Court of Appeal below observed, the *Kovacevich* analysis produces a result against public policy and ignores *Laird's* critical distinction between the "*fact and knowledge* of damage, and the *amount* of damage." (*Laird, supra*, 2 Cal.4th at p. 615, italics in original; see also *Budd* v. *Nixen, supra*, 6 Cal.3d 195 [cause of action for legal malpractice accrues when client discovers or should discover facts essential to malpractice action, and suffers appreciable and actual harm from malpractice].) Therefore, to the extent that *Kovacevich* can be interpreted to hold that the mere accrual of the obligation for attorney fees is sufficient to trigger the statute of limitations, it is disapproved.

Niles also relies on *Hensley, supra*, 13 Cal.App.4th 1165. There, the plaintiff was represented in a marital dissolution by the defendant attorney. After a settlement conference on September 1989, the parties and their counsel asked the court to record a stipulated settlement agreement allocating property and debts, providing for equalization payments, waiving spousal support, and obligating each party to execute implementing documents.

After examining the parties under oath, the court approved the stipulation, informed them that the settlement was effective immediately, and directed husband's attorney to prepare the judgment.

The *Hensley* plaintiff later refused to agree to the proposed judgment and discharged defendant as her attorney. The plaintiff's new counsel moved unsuccessfully to set aside the stipulated settlement agreement. The judgment of dissolution incorporating the settlement agreement was entered in October 1990.

The plaintiff filed her legal malpractice action in November 1990. The trial court granted summary judgment for the defendant on the ground that the one-year statute of limitations of section 340.6 had run because the plaintiff suffered "actual injury" at the time she stipulated to the settlement. The Court of Appeal affirmed, concluding that the statute of limitations was not tolled by defendant's "continuing representation" of the plaintiff. The court reasoned that such representation ceased when the plaintiff asked new counsel to represent her, not when the defendant signed the substitution of attorney. The court concluded that the statute was not tolled until the judgment of dissolution, and agreed with the trial court that the plaintiff suffered "actual injury" when she stipulated to the settlement agreement.

Contrary to Niles's contention, *Hensley* is distinguishable on its facts. In *Hensley,* the stipulation to the marital settlement agreement acted immediately to deprive the plaintiff of certain property. Thus, once the stipulation was entered by the court, the plaintiff suffered "actual injury" under section 340.6 (a)(1). (See also *Bennett* v. *McCall* (1993) 19 Cal.App.4th 122, 127 [23 Cal.Rptr.2d 268] [plaintiff suffered actual harm when he entered into binding marital settlement agreement and hired new counsel in attempt to correct alleged inequities in agreement].) By contrast, as noted above, ITT did not suffer "actual injury" until it entered into the adverse settlement agreement with the debtor. In essence, the *Hensley* final settlement agreement, like the ITT settlement agreement with the debtor, acted as the benchmark from which the plaintiff could sue for legal malpractice, for that is the point the malpractice was both discovered and confirmed *and* the plaintiff was damaged. Such a holding is consistent with our observation in *Laird* that "the focus of section 340.6 is on *discovery* of the malpractice and actual injury, not success on appeal or proof of the total amount of monetary damages suffered by the former client." (*Laird, supra,* 2 Cal.4th at p. 614.)

In a related context, Niles asserts that the pre-*Laird* case of *Horne* v. *Peckham* (1979) 97 Cal.App.3d 404 [158 Cal.Rptr. 714] supports his contention that the statute of limitations for legal malpractice should commence

at the point the former client incurs attorney fees defending the documentation drafted by the former attorney. In *Horne,* an attorney was sued for malpractice after negligently drafting an irrevocable trust and a license agreement for Horne's three sons. The negligence cost the plaintiffs substantial additional taxes assessed by the Internal Revenue Service in August 1970, because the trust failed to transfer tax liability for the licensor's income to the trust beneficiaries. The plaintiffs hired independent counsel to contest the assessment, but after losing at the administrative level conceded the tax liability. In 1972, the plaintiffs brought a malpractice action against the lawyer who drafted the trust and license agreement.

The defendant asserted the cause of action for malpractice was barred by the limitations period for malpractice actions, which at that time was two years, (former § 339, subd. (1)), and claimed the statute of limitations commenced when the plaintiffs paid the defendant's bill for the legal work in creating the trust in 1967. The Court of Appeal disagreed, concluding that the cause of action for malpractice accrued when the trust was challenged and "plaintiffs were forced to pay legal fees to defend the negligently drafted trust documents." (*Horne* v. *Peckham, supra,* 97 Cal.App.3d at p. 417.) This statement in *Horne,* asserts Niles, supports his contention that in transactional malpractice cases, the cause of action for legal malpractice should accrue once the former client incurs attorney fees to defend the negligently drafted documents.

We do not read *Horne* v. *Peckham, supra,* 97 Cal.App.3d 404, to stand for such a broad rule. The *Horne* court recognized that the plaintiffs learned of the malpractice when they were advised by the new attorney that they would have to pay additional taxes as a result of the deficiencies in the documents drafted by the defendant. Under former section 339, subdivision (1), the plaintiffs then had two years to file the malpractice action. The Court of Appeal simply concluded that the date on which the plaintiffs should have discovered the malpractice was a factual issue for the jury, and that there was substantial evidence to support the jury's finding of timeliness. The *Horne* court was not faced with the question, nor did the court specifically determine, whether "actual injury" occurred when the client incurred attorney fees, or after the trust was challenged. That determination was not necessary to the court's judgment. Accordingly, *Horne* is not helpful to Niles in creating a bright line rule that establishes the incurring of attorney fees as the event triggering the malpractice action in transactional malpractice cases. Nonetheless, to the extent the case can be so interpreted, it is disapproved.

■ Niles next asserts ITT admitted in its pleadings that it suffered actual injury when it hired an attorney to defend the adequacy of the negligently

prepared documentation in an effort to mitigate its damages. Niles claims ITT's defense of the loan documentation in the adversary proceeding amounted to a judicial admission that is conclusive evidence that ITT had discovered the malpractice and suffered "actual injury" at the time it defended the adversary proceeding. (See, e.g., *Troche* v. *Daley* (1990) 217 Cal.App.3d 403 [266 Cal.Rptr. 34] [judicial admission in pleading is conclusive concession of truth of matter and has effect of removing it from issues in litigation].)

Niles's contention is without merit. Section 340.6 provides that knowledge or discovery of malpractice is different from "actual injury" and both knowledge and "actual injury" must be present before a cause of action for legal malpractice will accrue. (§ 340.6 (a)(1).) Accordingly, ITT's statement in its pleadings that it defended the documentation in the adversary proceeding in an attempt to "mitigate" its damages may indicate that ITT "discovered" the potential malpractice at the time the adversary proceeding was filed, but did not conclusively establish or "admit" that ITT was actually damaged by the malpractice.

### 3. *Public Policy*

Niles contends that the Court of Appeal's conclusion that ITT suffered "actual injury" on settlement of the adversary proceedings is inconsistent with *Laird*'s observation that tolling periods in statutes of limitations be limited to avoid allowing clients "unilaterally to control the commencement of the statute of limitations and hence undermine the legislative goal of resolving cases while the evidence is fresh, witnesses are available, and memories have not faded." (*Laird, supra,* 2 Cal.4th at p. 618.) Our discussion in *Laird,* however, presumes that the client has discovered the malpractice *and* suffered "actual injury" as a result of the malpractice. In the present case, ITT did not suffer "actual injury" resulting from Niles's alleged malpractice until it settled the adverse proceeding on unfavorable terms.

Moreover, there was no danger in the present case that tolling the malpractice statute of limitations until conclusion of the adversary proceeding would undermine the statute's goals of preserving evidence and notifying defendants. ITT notified Niles that he should contact his malpractice insurer as soon as ITT realized it would have to defend the documentation prepared by Niles in the adversary proceeding. Finally, it would be a waste of judicial resources to require both the adversary proceeding and the attorney malpractice action to be litigated simultaneously. Had ITT prevailed in the adversary proceeding, the malpractice action would have been unnecessary.

## Conclusion

■ Consistent with our reasoning in *Laird,* in which we held that a cause of action for legal malpractice accrues under section 340.6 (a) when the former client "discovers" the malpractice *and* is "actually harmed" by it, we conclude that in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage *and* suffered "actual injury" due to the malpractice under section 340.6. Therefore, in the present case, the statute of limitations of section 340.6 was tolled until the action contesting the documentation was concluded.

Our holding is narrow, and limited to the circumstances typified by this case. Of course, under *Laird, supra,* 2 Cal.4th 606, the statute will not be tolled during the time the client appeals from the underlying judgment, settlement, or dismissal on which the claim of malpractice is based. Accordingly, the Court of Appeal judgment is affirmed.

Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

**MOSK, J.**—I concur under compulsion of *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], and the analogous reasoning thereto (maj. opn., *ante,* pp. 250-251).

However, I still prefer the views expressed in my dissent in *Laird, supra,* 2 Cal.4th at pages 621-628. The problems that continue to arise in determining when the statute of limitations runs emphasize the points I discussed in that dissent.

**KENNARD, J.,** Dissenting.—How long after a client discovers the facts constituting an attorney's wrongful act or omission can the client wait to bring a malpractice action? Code of Civil Procedure section 340.6 (hereafter section 340.6) states that the statute of limitations time period is tolled until the client suffers "actual injury."[1]

The majority holds that when an attorney's negligent preparation of documents results in litigation between the client and a third party, the client does not sustain "actual injury" until the litigation terminates by judgment,

---

[1]As relevant here, section 340.6, subdivision (a) provides: "An action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers . . . the facts constituting the wrongful act or omission . . . ." Subdivision (a)(1) of the statute tolls the running of the statute of limitations if "[t]he plaintiff has not sustained actual injury."

settlement, or dismissal adverse to the client. (Maj. opn., *ante,* at p. 258.) In the majority's view, a client who prevails in an action caused by the attorney's malpractice never suffers "actual injury." (*Id.* at pp. 250-251, 257.)

The majority is wrong. Section 340.6 codifies this court's decisions in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] (hereafter *Neel*), and *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] (hereafter *Budd*). (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691] (hereafter *Laird*)). In *Budd,* this court held that the statutory limitations period during which a client must assert a claim for legal malpractice commences when the client suffers "any appreciable and actual harm," and that the client's payment of attorney fees may constitute such harm. (*Budd,* at p. 201; *id.* at pp. 198, 201-202.) Because *Budd* was codified by the Legislature in section 340.6, the holding of the majority in this case cannot be reconciled with section 340.6. In addition, it defies common sense to hold, as the majority does, that a client has not sustained "actual injury" even though the client has paid thousands, perhaps hundreds of thousands, of dollars because the attorney's malpractice has compelled the client to prosecute or defend third party litigation. Accordingly, I dissent.

I

In December 1984, plaintiff ITT Small Business Finance Corporation (hereafter ITT) retained an attorney, Niles, to prepare a note and loan documents for a $200,000 loan from ITT to California Solution, Inc. (hereafter debtor). The documents were intended to grant ITT a first security interest in the debtor's machinery, fixtures, accounts receivable, and other valuables.

In February 1990, ITT learned of possible deficiencies in the loan documents. At that time, the debtor, seeking to avoid ITT's lien on its property, challenged the sufficiency of the documents in an adversary proceeding in the United States Bankruptcy Court. ITT retained independent counsel to represent it in the adversary proceeding, informed Niles that it expected him to indemnify ITT for any losses resulting from negligence in preparing the loan documentation, and advised Niles to contact his malpractice insurer. ITT incurred attorney fees and other litigation costs in defending its rights under the loan. On January 28, 1992, ITT settled the adversary proceeding by agreeing to accept an amount less than the $200,000 full value of the security.

On March 16, 1992, more than six years after Niles had prepared the loan documents and more than two years after ITT learned of potential deficiencies in these loan documents, ITT sued Niles for legal malpractice.

The majority holds that the lawsuit was timely filed because ITT did not sustain actual injury until it settled with the debtor on January 28, 1992. But, as I shall explain, actual injury may be sustained well before the resolution of a third party action by adverse judgment or settlement.

## II

Subdivision (a)(1) of section 340.6 provides that the statute of limitations for legal malpractice is tolled during the time that "[t]he plaintiff has not sustained actual injury." As this court recently stated in *Laird, supra,* 2 Cal.4th at page 611: "[W]hen the Legislature adopted section 340.6 in 1977, it implicitly . . . codified the discovery rule of *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand*[, *supra,*] 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] (hereafter *Neel*), and *Budd* v. *Nixen*[, *supra,*] 6 Cal.3d 195, 198 [98 Cal.Rptr. 849, 491 P.2d 433] (hereafter *Budd*). These cases hold that a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice. Discovery of any appreciable and actual harm from the attorney's negligent conduct establishes a cause of action and begins the running of the limitations period. (*Budd, supra,* 6 Cal.3d at p. 201.)"

The phrase "actual injury" in section 340.6 had its origin in this court's decision in *Budd, supra,* 6 Cal.3d 195.[2] In *Budd,* an attorney engaged to represent a defendant in a lawsuit committed malpractice by failing to allege a crucial defense in the answer to the complaint. The client discovered the attorney's malpractice on September 14, 1964, but did not file the malpractice action until September 11, 1967, almost three years later. (*Id.* at p. 197.) A judgment in the underlying lawsuit was entered against the client on November 4, 1965. (*Id.* at p. 199.) Thus, the client learned of the facts constituting the malpractice more than two years before he filed the malpractice action, but the adverse judgment was entered against the client *less than two years before* the malpractice action was filed. When this court decided *Budd,* the applicable statute of limitations period was two years. (*Ibid.*) If, as the majority now asserts, actual injury is not sustained until adverse judgment is entered (maj. opn., *ante,* at pp. 250, 258), the decision in *Budd* would have held that the action in that case was timely filed as a matter of law because the malpractice action was filed within the two-year statutory period.

---

[2]In *Neel, supra,* 6 Cal.3d 176, 190, this court addressed a statute of limitations issue as to when the plaintiff knew, or should have known, of all material facts essential to the elements of a cause of action for legal malpractice. Here, the issue of when ITT discovered the facts constituting the wrongful act or omission is not before us.

Instead, *Budd* held "that a cause of action for legal malpractice does not accrue until the client suffers damage and that the determination of that date raises an issue of fact." (6 Cal.3d at p. 198.) *Budd* noted that the statutory time would start to run "*before* the client sustains all, or even the greater part, of the damages occasioned by [the] attorney's negligence" (*id.* at p. 201, italics added), and that "[*a*]*ny appreciable and actual harm* flowing from the attorney's negligent conduct" would trigger the statutory period in which to bring the malpractice action. (*Ibid.*, italics added.)

Indeed, this court in *Budd* expressly rejected the very rule the majority adopts here. The client in *Budd* argued that the malpractice action was timely filed because "damage did not occur until entry of final judgment in the trial court on November 4, 1965." (6 Cal.3d at p. 203.) This court did not accept the client's argument, however. Instead, it remanded the case so that the trial court could determine, in further proceedings, when the client sustained actual injury. (*Id.* at pp. 203-204.)

Because, as discussed above, section 340.6 codifies *Budd, supra*, 6 Cal.3d 195, and because *Budd* rejected the very rule now promulgated by the majority, the majority's decision cannot be reconciled with the statute it purports to construe.

Nor can this court's recent decision in *Laird, supra*, 2 Cal.4th 606, be construed as overruling *Budd, supra*, 6 Cal.3d 195. In *Laird,* this court expressly recognized that section 340.6 codified the rule of *Budd,* and relied on *Budd* to support its holding (2 Cal.4th at pp. 611-615, 620). Thus, to construe *Laird* as holding that "actual injury" does not occur until the entry of an adverse judgment would render *Laird* internally inconsistent and contrary to *Budd,* the case *Laird* purported to follow.[3] And because section 340.6 codified the rule of *Budd,* such a construction would also mean that *Laird* was wrongly decided and must be overruled. This construction of *Laird,* however, may be avoided. In *Laird,* the issue was whether the statute of limitations for legal malpractice was tolled while the client was appealing an adverse judgment, not whether "actual injury" was sustained before the entry of the adverse judgment.[4] Accordingly, *Laird* should be read as deciding only the issue there presented—that the statutory limitations period

---

[3]Curiously, the majority states that this court's recent decision in *Laird, supra*, 2 Cal.4th 606, warned litigants against "literal interpretation" of *Budd, supra*, 6 Cal.3d 195. (Maj. opn, *ante*, at p. 250.) I find no such warning in *Laird.* Indeed, on the page the majority cites (2 Cal.4th at p. 612), *Laird* reiterates *Budd*'s holding (6 Cal.3d at p. 201) that a client's cause of action for legal malpractice may arise before the client sustains all or even the greater part of the damages from the malpractice.

[4]The facts of *Laird* presented no issue of whether actual injury may be sustained before the entry of an adverse judgment. (2 Cal.4th at p. 610 & fn. 3.) The defendant attorneys in *Laird*

is not tolled under section 340.6 during an appeal from a judgment—not as authority for a rule inconsistent with section 340.6 and with *Budd, supra,* 6 Cal.3d 195.

The majority's construction of section 340.6 ignores the statute's plain meaning. A client engaged in litigation arising from his or her attorney's acts of malpractice may incur thousands of dollars in attorney fees or other legal expenses long before an adverse judgment, settlement, or dismissal occurs. Yet, according to the majority, the client has suffered no "actual injury" under section 340.6 until the case is finally resolved. The majority's conclusion that these expenses are not "actual injury" flies in the face of reality.

More significantly, the majority's decision is harmful to injured clients because it eliminates any legal recourse for a client whose lawyer's negligence embroiled the client in costly litigation in which the client was able to prevail. In such a case, the majority holds that the client has suffered *no injury.* (Maj. opn., *ante,* at pp. 250-251, 257.) Thus, under the majority's decision, clients who have incurred these expenses may well be left with no recourse.

The majority opinion is inconsistent with this court's decision in *Budd, supra,* 6 Cal.3d 195. It misconstrues this court's recent decision in *Laird, supra,* 2 Cal.4th 606. It ignores the plain meaning of the governing statute, section 340.6. And clients who have expended large sums of money to defend against the consequences of the negligence of their attorneys are now without a legal remedy for their loss.

Accordingly, I dissent.

---

agreed that they had continued to represent the client until December 7, 1981, a date *after* the entry of the adverse judgment on October 20, 1981, and that therefore the limitations period was tolled until December 7, 1981, based on the statutory provision for tolling during continued representation (§ 340.6, subd. (a)(2)).