[No. A067035. First Dist., Div. Five. July 7, 1995.]

NORTON KARNO et al., Plaintiffs and Appellants, v.
W. CRAIG BIDDLE et al., Defendants and Respondents.

COUNSEL

Anthony C. Rodriguez for Plaintiffs and Appellants.

Farbstein & Blackman and John S. Blackman for Defendants and Respondents.

**OPINION**

**HANING, J.**—Plaintiffs/appellants Norton Karno et al. appeal the dismissal of their legal malpractice action against defendants/respondents W. Craig Biddle et al.[1] after respondents' demurrer was sustained without leave to amend on statute of limitations grounds. (Code Civ. Proc., § 340.6, subd. (a)(1), (2).)[2] Appellants contend the trial court erred regarding the commencement of the limitation period.

### FACTS AND PROCEDURAL HISTORY

Since this appeal is taken from an order of dismissal after a demurrer to appellants' second amended complaint was sustained without leave to amend, we must accept all material facts properly pleaded as true, and accept those subject to judicial notice (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), and we report them accordingly.

[1] Also appealing are Loretta Karno, Harold Marcus and Inge Marcus, doing business as Southlake Mobilehome Park (Southlake) and Niles Canyon Mobile Estates (Niles). Also responding are the Law Offices of Biddle & Hamilton.

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

Appellants are the owners of the Southlake and Niles mobilehome parks located in Fremont. In approximately August 1988 the United States Congress approved an amendment to the federal Fair Housing Act (the amendment) prohibiting discrimination against families with children in all housing, including mobilehome parks. The amendment provided an exception whereby families with children could be excluded from senior housing communities if all persons moving into the senior housing community were at least 62 years of age. At the time the amendment was approved Southlake required all new residents to be at least 18 years old, and Niles required all new residents to be at least 55 years old.

In August 1988, prior to congressional approval of the amendment, appellants retained respondents, attorneys specializing in matters involving mobilehome parks, to provide legal advice regarding the effect the amendment would have on their parks if enacted. Respondents advised appellants to immediately change the rules and regulations so that all new residents at Southlake and Niles must be at least 62 years of age. Respondents failed to advise appellants that six months notice of such a rule change was required by Civil Code section 798.25. On September 6, 1988, in reliance on respondents' advice, and before the amendment was signed into law, appellants began enforcing the age-62-and-over policy at Southlake and Niles without providing the requisite 6 months' notice. Prospective residents were told they could not purchase mobilehomes at either park unless they were at least age 62. In October 1988 approximately 38 residents at Southlake and Niles sued appellants and the mobilehome parks' managers for damages and injunctive relief (hereafter the tenants' action), alleging they did not receive the required notice under Civil Code section 798.25. Attorney David Spangenberg was appellants' attorney of record in the tenants' action. In November 1988 the trial court in the tenants' action issued a preliminary injunction enjoining appellants from enforcing the rule change in the mobilehome parks, and invalidated the age-62-and-over residency requirement.

After the complaint in the tenants' action was filed, appellants continued to rely on respondents' expertise and advice regarding the impact of the new law on their mobilehome parks. Respondents drafted and/or approved notices to park tenants regarding the new law, participated in conference calls with appellants and their agents regarding the new law, and drafted a March 1989 memorandum regarding appellants' exposure for damages in the tenants' action. Sometime between March and December 1989 appellants retained respondent Biddle as an expert witness in the tenants' action to provide "continued expertise" and "continuing assistance" regarding the amendment and Civil Code section 798.25. On about December 11, 1989, appellants formally designated Biddle as their expert witness in the tenants' action.

On January 29, 1990, the trial court granted the tenants' motion for summary adjudication of issues and found that appellants' amendment of the rules and regulations of Southlake and Niles violated Civil Code section 798.25 and were null, void and of no effect; and that appellants' implementation and enforcement of their age-62-and-over-only rule violated Civil Code section 798.25 and was therefore unlawful and invalid. On April 24, 1992, the trial court ruled the 24 "non-selling" tenants were prevailing parties in the tenants' action and were entitled to apply for attorney fees under Civil Code section 798.85.

On July 29, 1992, appellants and respondents entered into an agreement tolling the statute of limitations with respect to any claims appellants might have against respondents arising out of the legal advice and services resulting in the tenants' action, including claims for malpractice and/or indemnity. The tolling agreement stated, in pertinent part: "During the term of this Agreement the parties agree to toll the statute of limitations applicable to any and all claims or potential claims or causes of action that [appellants] may have against [respondents] arising directly or indirectly out of, or related in any way to, the subject matter of the Action, including the filing and service of any action by [appellants] against [respondents] seeking legal and/or equitable relief." The tolling agreement expired upon the settlement, dismissal or entry of judgment in the tenants' action; or on the 60th day after notice of termination of the action was given by appellants to respondents or respondents to appellants.

On September 11, 1992, the nonselling tenants in the tenants' action were awarded $199,435 in attorney fees. On or about October 25, 1992, appellants "agreed" to settle the tenants' action with the selling and nonselling tenants for approximately $800,000.

On April 1, 1993, appellants and respondents executed an addendum to the tolling agreement extending the statute of limitations until November 1, 1993.

On May 24, 1993, pursuant to the parties' stipulation that the case had been settled, the trial court in the tenants' action vacated the April 24, 1992, ruling designating the nonselling tenants as prevailing parties, and dismissed the entire action with prejudice.

On October 29, 1993, appellants filed the instant action for legal malpractice and indemnity, alleging that respondents negligently represented them in connection with their mobilehome park rules and regulations, and sought indemnification from respondents for their $800,000 settlement with their

tenants. On April 12, 1994, appellants filed and served their second amended complaint.

Respondents demurred primarily on the ground that the action was barred by the statute of limitations (§ 340.6), and the demurrer was sustained without leave to amend on that ground. The trial court ruled that appellants began to incur actual damages, and therefore sustained actual injury from respondents' alleged malpractice in 1988 when they began to incur legal fees. It also found that when appellants retained respondent Biddle as an expert to testify about the reasonable nature of his legal advice, they had already retained other, independent litigation counsel. Consequently, the court held, respondents did not continue to represent appellants regarding the specific subject matter in which the malpractice occurred, and therefore the statute of limitations was not tolled by the continuing representation clause. (§ 340.6, subd. (a)(2).)

## DISCUSSION

Section 340.6 contains the statute of limitations for legal malpractice actions. It states, in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; . . ."

This case involves the one-year period of section 340.6. There is no dispute about the date of appellants' discovery of respondents' alleged professional negligence; the statute of limitations commenced running when appellants sustained actual injury. (*ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245, 250 [36 Cal.Rptr.2d 552, 885 P.2d 965].)

Appellants contend they did not suffer actual injury until the settlement of the tenants' action. Respondents rejoin that appellants suffered actual injury sometime between the November 1988 preliminary injunction and the January 29, 1990, summary adjudication order determining that appellants' attempted rule change was "null, void, invalid, and of no effect."

We conclude this case is governed by *ITT Small Business Finance Corp.* v. *Niles*, *supra*, 9 Cal.4th 245, and *Henry* v. *Monaghan**\* (Cal.App.),

\*Reporter's Note: Opinion (D018303) deleted upon direction of Supreme Court by order dated August 10, 1995.

both of which were decided while this appeal was pending. The trial court and respondents properly relied on Court of Appeal opinions which were disapproved by the Supreme Court in *Niles*.

In *Niles*, a lender sued its attorney for negligent preparation of loan documents after the lender was forced to litigate the adequacy of those documents in an underlying action by the debtor. Almost two years after commencement of the underlying action the lender and debtor settled it for less than the full value of the loan, and the legal malpractice action was filed two months after the settlement. The Supreme Court considered whether the lender suffered actual injury when it incurred legal fees defending the adequacy of the loan documents in the underlying litigation, or when the underlying litigation settled.

In reviewing *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], *Niles* stated, "[In *Laird*] We concluded that because the focus of a legal malpractice action involving negligence that occurs in the handling of a client's litigation is the attorney's *conduct* in the underlying case, the statute of limitations should commence 'on entry of adverse judgment or final order.' [Citation.]" (*ITT Small Business Finance Corp.* v. *Niles*, *supra*, 9 Cal.4th at p. 250, original italics.) *Niles* distinguished malpractice based on an attorney's negligent conduct in litigation from "transactional malpractice," which it defined as "malpractice that is based on the negligent preparation of documents that causes the client harm." (*Ibid.*) It held: "Consistent with our reasoning in *Laird,* in which we held that a cause of action for legal malpractice accrues under section 340.6 (a) when the former client 'discovers' the malpractice *and* is 'actually harmed' by it, we conclude that in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage *and* suffered 'actual injury' due to the malpractice under section 340.6." (*Id.* at p. 258, original italics.)

In *Henry* a corporate shareholder and officer (Henry) brought a professional negligence action against numerous attorneys based on their erroneous tax advice regarding the sale and redemption of securities. Although the negligent advice occurred in 1982, it was not until 1991 that the Internal Revenue Service (IRS) sent Henry a notice of deficiency regarding the transaction, and Henry filed a protest in the tax court. Four months later, while the matter was pending in the tax court, Henry filed the malpractice

action against his former attorneys. The issue in *Henry* was when the injury occurred to trigger the statute of limitations.

*Henry* first determined that erroneous tax advice which exposed the client to claims by the IRS was "transactional" as in *Niles,* rather than "conduct" or "litigational" as in *Laird.* It held that because the alleged malpractice was transactional, the client did not suffer actual injury to commence the running of the statute of limitations until the IRS assessed a deficiency assessment against him. (See *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606, 622 [38 Cal.Rptr.2d 150, 888 P.2d 1279] [actual injury occurred in accountant malpractice action when tax deficiency assessed by IRS].)

In the instant case, the alleged negligent legal advice falls into the "transactional" category. When negligent legal advice exposes the client to litigation, we construe *Niles* and *Henry* to hold that actual injury does not occur until the litigation is resolved adversely to the client. Like *Henry,* we do not interpret *Niles* as standing for the proposition that transactional negligence requires the negligent preparation of documents. We conclude the Supreme Court's use of the term "transactional" referred to nonlitigational legal services, be they simply oral or written advice or the preparation of contractual or other documents which thereafter result in litigation or otherwise cause harm for the client. The litigation against appellants by their tenants is alleged to have been caused by respondents' erroneous legal advice. Consequently, appellants' legal malpractice action against respondents did not accrue until the tenants' litigation was settled by appellants' payment of damages to their tenants. (*ITT Small Business Finance Corp.* v. *Niles*, *supra*, 9 Cal.4th at p. 258.)

In the instant case, contrary to respondents' contention, neither the preliminary injunction nor the summary adjudication order is a final judgment. Therefore, the date of their issuance does not constitute the date of actual injury for commencement of the statute of limitations.

As we noted previously, appellants' complaint alleges that on or about October 25, 1992, they "agreed" to settle the tenants' action. They do not allege that the tenants agreed or if their "agreement" was actually an offer that the tenants accepted. It appears, however, that October 25, 1992, may not be the actual settlement date; the tenants' action was not dismissed until May 24, 1993. If the settlement occurred on October 25, 1992, the tolling agreement would have expired by its terms on that date. However, more than

five months later, on April 1, 1993, the parties *extended* the tolling agreement in its entirety until November 1, 1993.[3] Thus, in either event the instant action filed October 29, 1993, was timely.

In light of our determination that the complaint was timely filed, we need not address appellants' contention that their complaint was sufficient to withstand demurrer under the continuing representation provision of section 340.6, subdivision (a)(2).

The judgment of dismissal is reversed, and the cause remanded with directions to overrule respondents' demurrer.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied August 2, 1995, and respondents' petition for review by the Supreme Court was denied November 7, 1995. Kennard, J., Arabian, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[3]Appellants' opening brief states that the tolling agreement was extended until November 1, 1993, "to enable the parties to discuss settlement."