[No. B076383. Second Dist., Div. Three. Aug. 25, 1994.]

In re the Marriage of KATHLEEN McDONALD and HAROLD CABALLERO.
KATHLEEN McDONALD CABALLERO, Appellant, v.
HAROLD CABALLERO, Respondent.

COUNSEL

Lurvey & Shapiro, Ira H. Lurvey, Judith Salkow Shapiro, Augustine & Seymour and Frederick J. Seymour for Appellant.

Steven Sindell, Robert Gaston and Edward J. Horowitz for Respondent.

**OPINION**

**CROSKEY, J.—**

### INTRODUCTION

Appellant Kathleen McDonald Caballero (Kathleen) appeals from the minute order of the family law division of the superior court granting the

motion of Kathleen's husband, Harold Caballero (Harold), to quash service of summons of Kathleen's petition for dissolution or legal separation and dismissing the action. The petition was filed by Kathleen's son, Doyle D. McDonald (Doyle), in his capacity as Kathleen's attorney in fact under the general durable power of attorney given by Kathleen to Doyle in 1990.

While we agree that Doyle's status as Kathleen's attorney in fact, and her nominee for appointment as her conservator, did not give him the legal authority of a guardian ad litem, it did establish that he was *presumptively* entitled to be appointed as such guardian. It was therefore error for the family law court to deny his request for such appointment and to dismiss the action on the ground it did not have jurisdiction. We reverse and remand with instructions to reconsider Doyle's appointment as Kathleen's guardian ad litem and to address remedies available to her under the Family Law Act.

### FACTUAL AND PROCEDURAL BACKGROUND

Kathleen and Harold were married October 15, 1959. Both were previously widowed. Kathleen had four surviving children from her first marriage to Doyle McDonald: two daughters and two sons. Harold had two daughters from his first marriage.

On September 18, 1990, Kathleen, represented by counsel, executed a statutory short form power of attorney, appointing Doyle her attorney in fact. (Civ. Code, § 2475 et seq.) He was granted all the powers designated in the form. The only special provision and limitation was that he not have any power to change the dispositive provisions of any estate planning documents of Kathleen. Kathleen also executed a durable power of attorney for health (Civ. Code, § 2430 et seq.), designating Doyle as her agent to make health care decisions for her. Both documents also nominated Doyle as her conservator in the event a court decides she is unable properly to provide for her personal needs for physical health, food, clothing or shelter or decides one should be appointed to manage her financial affairs and property.

A petition for dissolution of the Caballeros' marriage was filed on March 11, 1993. Doyle executed the petition on behalf of Kathleen as her attorney in fact. The petition was filed by an attorney.

In support of the petition, Doyle declared his 79-year-old mother suffered from Alzheimer's disease and he had been looking after her welfare "virtually daily since she was thrown out by my stepfather, Harold ('Cabby') Caballero . . . ." The couple had acquired an estate estimated to have a net worth in excess of $10-$15 million, composed of real estate and a mobile-home park business known as the Wilshire Ranch Company, a residence in

Pacific Palisades with equity value in excess of $1.6 million net of furnishings and securities and personal property, all of which was now solely under the management and control of Harold. Doyle indicated he believed Harold had treated his mother unfairly in various financial transactions and declared Harold was now claiming there was no community property and Kathleen owned nothing except a few stocks in her name and one-half interest in the residence. Kathleen's health had begun to fail three to five years earlier and Harold's attitude toward her became progressively more hostile. About a year ago, Harold ordered Kathleen to leave the house and she was placed in Marycrest Manor, a residential care facility. Harold paid at least a portion of her bills until January 1993 when he announced he was no longer going to pay for her care and medical bills. Doyle requested attorney fees and support as well as a determination of property rights.

The declaration of Attorney Ira Lurvey, in support of Kathleen's petition, stated the need for an award of $75,000 for attorney fees pendente lite and an advance of $50,000 on account of anticipated accountants' and appraiser's fees and costs. He expressed the need for a complete tracing of all assets acquired by Harold during the past 34 years of marriage, in light of Harold's statement there is no community property and his stated position that he has no duty to support Kathleen or to pay her medical bills. Lurvey represented that he was a certified specialist in family law and his partner, Ms. Shapiro, was former chair of the family law section of the county and had lectured and written widely on family law.

Harold filed a motion to quash service of summons. He argued Doyle was not authorized to bring a dissolution action on behalf of Kathleen under California law and that an agent with financial interest in the matter, as Doyle was, would be barred from doing so. Harold declared he had "generously and fairly provided for my wife, her five children and my own two daughters." He asserted Doyle had a "significant conflict of interest," stating he personally transferred $152,500 to Doyle about a year earlier on behalf of his mother and Doyle borrowed $25,000 from her almost three years ago and had not repaid any of it. Kathleen was a devoted Catholic and Harold did not believe she was seeking divorce or was even aware Doyle had filed a petition for dissolution.

On or about April 15, 1993, Harold filed in probate court an ex parte petition for the appointment of legal counsel, selected from the probate volunteer panel, for Kathleen and a petition for temporary and permanent

conservatorship of the person and estate of Kathleen.[1] The petition represented there was an immediate need for a conservator of the person because of the pending dissolution action, instituted by Doyle for the purpose of obtaining a property settlement, and that Kathleen, as a devout Catholic, would not consider divorce.

The probate court appointed Frederick Seymour from the volunteer attorney panel to determine whether Kathleen required a conservator. Seymour later reported that no conservator was required and Kathleen should be permitted to pursue her claims against Harold in the family law court.

Before the hearing on Harold's motion to quash in the family law court, Kathleen's attorneys noticed the deposition of Harold. Harold sought a protective order to stay the deposition and other discovery proceedings until Harold's motion to quash had been heard. Kathleen's attorneys then sought an order restraining Harold from interfering with the family court proceedings. They pointed out Harold had filed a "frivolous" motion to quash service, continued Kathleen's order to show cause (O.S.C.) for support, used the delay to bring an ex parte a request in the probate court that he be appointed conservator for Kathleen, asked the court to appoint an attorney for Kathleen, without advising the court that she had attorneys, refused to appear for deposition and started direct interference against the commercial business of Doyle. Harold reportedly sent Doyle a three-day notice to pay rent or quit to evict the family graphics business from the premises alleged to be community property and where Doyle has conducted business for at least the past ten years.

The family law court denied Harold's request for a protective order and ordered him to appear for deposition limited to matters related to the motion to quash. The court granted Kathleen's request for an order restraining Harold from transferring, hypothecating or disposing of any property, or in any way interfering with the community property rights of Kathleen. The trial court denied Kathleen's request for further restraining orders to the extent they would prevent Harold from proceeding with otherwise lawful legal actions. The award of discovery sanctions was continued to the scheduled hearing on the O.S.C. for attorney fees.

Harold appeared for the ordered deposition, but refused to answer any questions of substance. Kathleen sought sanctions.

The family law court heard all pending matters on May 19, 1993. Kathleen's petition had been amended to seek legal separation and Harold had

---

[1]We take judicial notice of these proceedings, Conservatorship of Caballero (Super. Ct. L.A. County, 1993, No. BP021999), as requested by the parties.

renewed his motion to quash in connection with the amended petition. Applying *In re Marriage of Higgason* (1973) 10 Cal.3d 476 [110 Cal.Rptr. 897, 516 P.2d 289] and Code of Civil Procedure section 372, the court granted Harold's motion to quash and denied Kathleen's motion for the court to deem itself as the probate court for determination of legal guardian or conservator. The family law court found Doyle lacked standing to bring the proceedings for legal separation or dissolution and ordered the action dismissed. Kathleen's attorney filed a notice of appeal on May 25, 1993.

Two days later, on May 27, 1993, Doyle filed a petition in the probate court to be appointed Kathleen's conservator, explaining that all of Kathleen's property was either in an inter vivos trust, for which Doyle is the trustee, or was community property under the management and control of Harold. The purpose of the requested appointment was to reinstate the family law action in order that Kathleen could obtain spousal support and maintenance and be awarded other marital rights.

The probate court denied Harold's petition to be appointed conservator and appointed Frumeh Labow as temporary conservator of Kathleen's estate, pointing out that the only thing the temporary conservator would be able to do would be to institute proceedings attempting to determine whether there has been misappropriation of Kathleen's estate by Doyle. The probate court expressed its opinion that Kathleen would be protected by having someone "totally adverse to Harold Caballero" represent Kathleen in family law proceedings. Labow opposed Doyle's petition to be appointed conservator, stating it may not be in Kathleen's best interest due to serious allegations of conflicts of interest. Harold also opposed Doyle's petition. On June 8, 1993, in spite of the express command of Kathleen's durable power of attorney, the probate court denied Doyle's petition and appointed Labow as temporary conservator of the person as well as of the estate.

Kathleen's attorneys petitioned the Court of Appeal for a writ of mandate, prohibition or other extraordinary relief from the probate court's order of June 8, contending error by the refusal without cause to honor the nomination of Doyle as Kathleen's conservator and "the refusal to permit Doyle to resume a family law action" for Kathleen, causing her irreparable harm because it was only through a family law action that she could receive certain remedies. Division Four of this court summarily denied the petition.[2]

In her capacity as temporary conservator of the person and the estate, Labow in October 1993 filed a petition which alleged that a portion, if not

---

[2]We, of course, are not bound by such summary denial. The court gave no reasons for its ruling and may well have believed that the issues presented should be resolved on appeal rather than by writ.

all, of Harold's interest in Wilshire Ranch Company (WRC) was community property and sought to void certain sales and gifts made by Harold to WRC, his children and family-related trusts. In response, it was asserted that Kathleen and Harold had entered into an oral agreement prior to marriage in which WRC was to remain Harold's separate property and the Rogers and McDonald Publishers, Inc. (R&M) was to remain Kathleen's separate property. Also, it was alleged Kathleen knew of and consented to the gifts of a portion of Harold's interest in WRC.

In March 1994, after conducting some discovery, including the depositions of Harold, Doyle and others, Labow petitioned for approval of a settlement agreement which purported to resolve the community property question. The petition alleged that Labow had concluded there was "overwhelming" evidence to establish WRC was Harold's separate property. According to Harold, at the time of their marriage in 1958, Kathleen's family owned R&M and Harold's family owned WRC. R&M was a more valuable company than WRC. Harold's will, executed just before their marriage, left only his personal belongings to Kathleen, "knowing she is otherwise adequately provided for." Harold showed Kathleen the will shortly after they were married. Neither expressed any dissatisfaction with their oral agreement. Kathleen signed a consent to an amendment to the WRC partnership agreement in 1964 so there would be no issue of commingling. Kathleen attended a meeting at the law offices of Harold's counsel in which the gifts and sale of most of his interest in WRC were discussed. Marion Montgomery, an old friend of Kathleen, testified at her deposition that in a conversation in about 1977 Kathleen advised her of the agreement Harold and she had reached concerning the two companies. Labow concluded it was in the best interest of the conservatorship estate that the probate court approve the settlement.[3]

Doyle and his sister, Katie McDonald Grimditch, objected to the proposed settlement agreement, for the reason that the issues purported to be settled by Labow's petition were among the same issues to be adjudicated by the family law court should Kathleen prevail in the instant appeal. They contended, even if the allegations of Labow's petition were true, a dismissal of that petition would better achieve the result of halting further investigation expenses to Kathleen which was the stated purpose of the proposed settlement; moreover, it would do so without causing irrevocable damage to Kathleen's marital property and support rights. However, at the hearing on the petition, it was determined that the issue of community property had not

---

[3]The basis for this conclusion is not at all clear, given that Kathleen, whose rights the conservator is supposed to be protecting, apparently received no benefit whatever from the settlement agreement.

been litigated. The probate court then set trial of the limited issue of whether the settlement should be approved for September 1, 1994.[4]

CONTENTIONS

Doyle, on behalf of Kathleen, contends that (1) adoption of the Durable Power of Attorney Act substituted an attorney in fact for a conservator for purposes of filing a dissolution petition on Kathleen's behalf; (2) it is a denial of equal protection to require an incompetent spouse to obtain a conservator to bring a family law action, but to allow a competent spouse to initiate an action against an incompetent without a conservator; (3) only under the Family Law Act can Kathleen's marital rights to a division of community property, spousal support and litigation assistance orders be protected; and (4) there was no jurisdictional issue justifying the trial court's order of dismissal.

Harold contends the family law court correctly applied controlling authorities in dismissing Kathleen's action as the court had no jurisdiction to proceed.

We discuss each of these contentions, although in a slightly different organizational context than that presented by the parties.

DISCUSSION

1. *The Trial Court Should Have Acted Upon the Request to Appoint a Guardian Ad Litem to Prosecute the Separate Maintenance Proceeding*

■■■ Except in nullity proceedings, the only persons permitted to be *parties* to a proceeding for dissolution or legal separation are the husband and wife. (Cal. Rules of Court, rule 1211(a).) An insane or incompetent spouse must appear through a guardian or a conservator of the estate or a guardian ad litem appointed by the court in which the action is pending. (Code Civ. Proc., § 372.) ■■■■■ An "incompetent person" includes " 'a person for whom a conservator may be appointed.' "[5] (*Ibid.*)

■■■ A guardian ad litem may be appointed upon application of a relative or friend, or any other party to the proceeding, or on the court's own

---

[4]It is not all clear to us to what extent this hearing is intended to reach and resolve the existing disputes as to Kathleen's marital rights. As we discuss below, we certainly do not believe that the probate court is the proper forum for the litigation of such critical issues.

[5]Doyle contends there is a denial of equal protection to incompetent spouses who are required to bring a family law action by means of a guardian ad litem or conservator while a competent spouse may initiate such an action against an incompetent spouse without a guardian. We reject this argument. Even as a defendant or respondent, the incompetent spouse must be represented by a guardian ad litem or conservator. (Code Civ. Proc., § 372.) The

motion. (Code Civ. Proc., § 373, subd. (c).) The appointment may be made on an ex parte application. (*Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1 [118 Cal.Rptr. 21, 529 P.2d 53].) "A trial court has discretion to accept or deny an application for appointment of a guardian ad litem (see *D. G.* v. *Superior Court* (1979) 100 Cal.App.3d 535 []). In the absence of a conflict of interest, however, the appointment is usually made on application only and involves little exercise of discretion. (See Code Civ. Proc., §§ 372, 373.)" (*J. W.* v. *Superior Court* (1993) 17 Cal.App.4th 958, 964, fn. 5 [22 Cal.Rptr.2d 527].) An order appointing a guardian ad litem or revoking an appointment is not appealable. (*In re Hathaway* (1896) 111 Cal. 270, 271 [43 P. 754]; *Estate of Corotto* (1954) 125 Cal.App.2d 314, 324 [270 P.2d 498].)

■ "A guardian ad litem is not a party to the action, but merely a party's representative [citation], an officer of the court [citation]. ' "He is like an agent with limited powers." ' [Citation.] 'The duties of a guardian ad litem are essentially ministerial.' [Citation.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [A] guardian ad litem's role is more than an attorney's but less than a party's. The guardian may make tactical and even fundamental decisions affecting the litigation but always with the interest of the guardian's charge in mind. Specifically, the guardian may not compromise fundamental rights, including the right to trial, without some countervailing and significant benefit." (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453, 1454 [23 Cal.Rptr.2d 918] [holding juvenile court erred in accepting guardian ad litem's waiver of mother's trial rights].)

■ It has been suggested that the time for the appointment on behalf of an insane or incompetent person pursuant to Code of Civil Procedure section 373, subdivision (c), "should no doubt be the same as that followed in connection with minors. [Citations.]" (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 62, p. 101.) We disagree. In the case of a minor, the appointment of a guardian must be made before the summons is issued. (Code Civ. Proc., § 373, subd. (a).) However, in the case of an insane or incompetent person, it appears incumbent upon the court to appoint a guardian ad litem *whenever* the need for one is brought to the court's attention. In the instant case, the appointment of a guardian ad litem should have been considered as soon as an objection was made to Doyle's capacity

person's incompetency justifies the requirement which was enacted to protect incompetent persons, not to preclude them legal rights. (*Briggs* v. *Briggs* (1958) 160 Cal.App.2d 312, 319 [325 P.2d 219].) Harold would not have been able to pursue an action against Kathleen until a guardian or conservator was appointed to protect her interests.

as attorney in fact to maintain the family law action on behalf of Kathleen. The summary denial of Doyle's request for such an appointment was improper.

■ *In re Marriage of Higgason, supra,* 10 Cal.3d 476, overruled on other grounds by *In re Marriage of Dawley* (1976) 17 Cal.3d 342, 352 [131 Cal.Rptr. 3, 551 P.2d 323], held a petition for dissolution of marriage may be brought on behalf of a spouse, who is under conservatorship, by and through the spouse's guardian ad litem. (10 Cal.3d at p. 483.) The wife in *Higgason,* was 73 years old and the husband was 48. Upon her own petition, the wife had been adjudicated an incompetent person two weeks after their marriage and a conservator, a commercial bank, had been appointed. The court held the guardian ad litem, her adopted daughter, could file a petition for dissolution on behalf of the wife, "provided it is established that the spouse is capable of exercising a judgment, and expressing a wish, that the marriage be dissolved on account of irreconcilable differences and has done so."[6] (*Ibid.*)

*Pulos* v. *Pulos* (1956) 140 Cal.App.2d 913 [295 P.2d 907] held an incompetent spouse may sue for separate maintenance through a guardian ad litem.[7] Kathleen's capacity to express her wishes is in dispute. However, it appears that Kathleen, even if in fact incapable of expressing a knowing and informed desire to terminate her marriage, may at the very least obtain a legal separation by means of a guardian ad litem.[8] *In re Marriage of Higgason* makes it clear that the guardian ad litem does *not* have to be the conservator of the estate appointed by the probate court but may be a different person. In this case, as we discuss below, Doyle was presumptively the person to receive such appointment.

---

[6]The court found the wife was "not insane" and had signed and verified the petition for dissolution and two declarations in support of an order to show cause. Also, her deposition showed she desired a dissolution. (10 Cal.3d at pp. 479, 483-484.)

[7]The wife in that case had conceded that a guardian ad litem could not maintain an action for divorce on behalf of his ward. Earlier, *Cohen* v. *Cohen* (1946) 73 Cal.App.2d 330 [166 P.2d 622] so held for the reason that a suit for divorce was "so strictly personal" that it could not be maintained at the pleasure of a guardian or committee of an insane person. (*Id.,* at p. 335.)

[8]It has been suggested either a dissolution or legal separation can be obtained by an incompetent spouse under the new statutes: "The Family Law Act, by eliminating the fault grounds and the adversary nature of the proceedings . . . permits a reexamination of both rules; i.e., the objects and effects of dissolution and legal separation are now so similar that it is difficult to see why an incompetent spouse could not seek either method of termination of marriage." (4 Witkin, Cal. Procedure, *supra,* Pleading, § 59, p. 99.)

The issue is not before us as the petition was amended to obtain a legal separation and a distribution of property.

## 2. A Power of Attorney Does Not Authorize a Person to File a Petition on Behalf of the Principal but at Least Creates a Presumption in Favor of Appointment as Guardian Ad Litem

A power of attorney is a device available to a person to empower another to act on his or her behalf. The durable power of attorney remains effective notwithstanding the subsequent incapacity of the principal. Generally, powers of attorney are strictly construed. (Civ. Code, § 2321.)

In its recommendation relating to the Uniform Durable Power of Attorney Act, the California Law Revision Commission explained the concept of the durable power of attorney was a recent development that avoided the serious practical problems created by the old rule that the incapacity of the principal to contract terminates a power of attorney. It "is a useful device since it avoids the need to establish a trust for a person of modest means and the need for a costly court-supervised conservatorship in the event of the person's future incapacity." (Recommendation Relating to Uniform Durable Power of Attorney Act (Dec. 1980) 15 Cal. Law Revision Com. Rep. (1980) p. 357.)

The commission pointed out the incapacitated principal is protected by the statutory provisions which allow the principal or a relative, friend, or interested person to petition for the appointment of a conservator of the estate (Prob. Code, § 1820) and, if a conservator is appointed, the conservator, along with other interested persons (Civ. Code, § 2411), are authorized to petition the probate court to terminate or amend the power of the attorney in fact. (Civ. Code, § 2412, subd. (d).)

■ Despite broad statutory language of the power of attorney with respect to claims and litigation, the attorney in fact may not act as an attorney at law on behalf of his principal, even though the principal could appear in propria persona. (*Drake* v. *Superior Court* (1994) 21 Cal.App.4th 1826, 1831 [26 Cal.Rptr.2d 829]; *J.W.* v. *Superior Court, supra,* 17 Cal.App.4th at p. 968.)

"Long before passage of the Power of Attorney Act, the law distinguished between an attorney in fact and an attorney at law and emphasized that a power of attorney is not a vehicle which authorizes an attorney in fact to act as an attorney at law. [Citation.] . . . [¶] Nothing in the Power of Attorney Act changes this rule. As the California Law Revision Commission recognized, the authority of attorneys in fact under section 2494 is restricted—it is 'subject to conditions of fact and law that exist outside this chapter.' (Recommendation Relating to Uniform Statutory Form Power of Attorney

Act (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 401.)" (*Drake* v. *Superior Court, supra*, 21 Cal.App.4th at p. 1831, fn. omitted.)

Similarly, the attorney in fact is subject to the Family Law Act, the Probate Code, the Code of Civil Procedure and local court rules. Thus, the attorney in fact may bring an action on behalf of his or her principal *only* as a guardian ad litem, the appointment of which is accomplished by order of the court. ▇▇▇ We reject Doyle's argument that the Durable Power of Attorney Act in any way altered this conclusion. However, that act did create an important rebuttable presumption which impacts the appointment of a guardian ad litem.

Although at the hearing on Harold's dismissal motion Doyle's counsel requested that Doyle or Frederick Seymour, the independent attorney appointed for Kathleen by the probate court, be appointed guardian ad litem, the court refused, stating it did not have jurisdiction.

Doyle failed to petition the family law court for appointment of himself as guardian ad litem before he filed the dissolution action. Nevertheless, the family law court had jurisdiction over Kathleen's petition and possessed the authority to appoint the required guardian ad litem at any time in order to protect her interests. (Code Civ. Proc., § 372.) The Durable Power of Attorney Act provides a formal means to nominate a conservator and, as such, creates *a rebuttable presumption* in favor of the designated attorney in fact and conservator nominee for appointment as guardian ad litem. Doyle was Kathleen's designated attorney in fact and her nominee for conservator at the time he initiated the family law action; his postfiling request to be appointed guardian ad litem was entitled to the benefit of such presumption and should not have been summarily rejected.

3. *A Determination of Kathleen's Property and Support Rights Is More Properly Resolved Under the Family Law Act*

The Family Law Act[9] provides remedies not available to Kathleen in the probate court. Under former sections 4357 and 4801 of the Civil Code, Kathleen may obtain immediate temporary, as well as permanent, spousal support from her husband consistent with the parties' standard of living during their marriage. Section 4801 mandates the court to "make specific factual findings with respect to the standard of living during the marriage, and . . . make appropriate factual determinations with respect to any other

---

[9]Civil Code former section 4000 et seq., repealed by Statutes 1992, chapter 162, section 3, operative January 1, 1994. See now Family Code. All references herein are to the former code provisions, effective at the time of the commencement of this action.

circumstances" pertaining to support by one spouse for the other. Support orders may commence on the date of filing and the support obligation automatically terminates upon the death of either spouse, absent a writing to the contrary. (Civ. Code, former § 4801, subds. (a) and (b).) Support payments must first be paid from earnings, income or accumulations acquired since separation, then from community or quasi-community property, and then finally, from the separate property of the supporting spouse. Only after the exhaustion of all of those sources can the supporting spouse resort to the separate property of the other. (Civ. Code, former § 4805.) The date of initiation of the action is important to the commencement of support.

Under the Family Law Act, Kathleen would have the right to recover fees and costs incurred in seeking her family law rights. (Civ. Code, former §§ 4370, 4370.6.) In probate court, by contrast, Kathleen will be responsible for all the fees and costs of the conservator and attorneys representing her. (Prob. Code, §§ 2640, 2641 and 2642.)

Under Probate Code section 3051, where one spouse is incapacitated and has a conservator, the other spouse who has legal capacity has "the exclusive management and control of the community property including . . . the exclusive power to dispose of the community property." However, under former section 4359 of the Civil Code, the family law court may issue immediate restraining orders ex parte to preclude any conduct contrary to the rights in separate or community property. (See, Cal. Rules of Court, rule 1283, providing for automatic restraining order upon service of summons.)

In addition, the family law court has authority to provide appropriate compensation to Kathleen for Harold's exclusive possession and use of the family residence while she has been receiving care elsewhere. (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374 [217 Cal.Rptr. 301].)

The family law court provides the only satisfactory forum to obtain an accounting of the property and obligations of Kathleen and Harold incident to their marriage. (Civ. Code, former §§ 5125, 5125.1.) This includes the requirement of full financial disclosure and cooperation with complete discovery within a short period of time. (Civ. Code, former §§ 4800.10, 4800.11.) Of substantial importance in the context of the instant case is the family law court's power and experience in the determination of community property rights after fully developed *adversarial proceedings*, rather than by a settlement agreement between a conservator, a stranger to Kathleen, and Harold and his children.

CONCLUSION

Kathleen's petition commenced an action against Harold upon its initial filing on March 11, 1993. Doyle, as Kathleen's attorney in fact, and nominee

for appointment as her conservator, is presumed to be qualified to act as Kathleen's guardian ad litem in family law court and, absent evidence to rebut that presumption, should have been so appointed. The family law court acquired jurisdiction on March 11, 1993, prior to the initiation of the probate proceedings and, upon remand from this court, retains jurisdiction to proceed with all aspects of the family law action and, to the extent permitted by the family law act, all orders affecting Kathleen's rights and interests should be effective from and after that date except for restraining orders heretofore issued which should be reinstated as of the date of their original issuance. The probate court should not, in any of its proceedings, including specifically the pending hearing on Labow's petition for approval of a purported settlement, take any action inconsistent with the parties' rights and interests under the family law action, which provides the more appropriate forum to adjudicate the support and community property issues at stake. Indeed, in our view, it would be in the interests of justice and the best interests of the parties if that hearing were stayed pending final resolution of the family law proceedings. The appointed conservator's function should be limited to caring for, preserving and administering the assets of Kathleen's estate as those assets may be determined to exist by the pending proceedings under the Family Law Act.

## DISPOSITION

The order of the trial court quashing service of summons on Harold and dismissing this action is reversed, and the matter is remanded for further proceedings in accordance with the views expressed herein. Costs are awarded to Kathleen.

Klein, P. J., and Kitching, J., concurred.

A petition for rehearing was denied September 26, 1994, and the opinion was modified to read as printed above.