[No. B098154. Second Dist., Div. Three. May 15, 1997.]

CAROLYN SINDELL, Individually and as Trustee, etc., et al., Plaintiffs and Appellants, v.
GIBSON, DUNN & CRUTCHER et al., Defendants and Respondents.

**COUNSEL**

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Amy Hsieh and Allen L. Michel for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Richard D. Hall and Shelley R. Meacham for Defendants and Respondents.

**OPINION**

**CROSKEY, J.**—In this case we consider an appeal from an order sustaining the demurrer to a complaint for attorney malpractice not because it was filed

beyond the applicable limitations period, but because it was filed too soon. Plaintiffs Carolyn Sindell and Cathleen Caballero are the adult daughters of Harold A. Caballero (Harold), now deceased.[1] They filed this action for professional malpractice against the defendants Gibson, Dunn & Crutcher, a law firm, and Shari Leinward, a partner in that firm (collectively, the defendants).

The gravamen of plaintiffs' action is that the defendants, who had been retained by Harold to prepare and document his estate plan, negligently failed to obtain a consent thereto from Harold's spouse, Kathleen.[2] As a result, litigation with Kathleen ensued following Harold's death over just what assets were properly to be included in and distributed from his estate. That litigation is still ongoing and is not yet resolved. Nonetheless, plaintiffs filed suit, alleging that they had already suffered an "actual injury" as a result of defendants' alleged negligence. The trial court sustained defendants' demurrer without leave to amend and dismissed the action *without prejudice* on the ground that until the litigation with Kathleen is finally resolved it cannot be determined whether or not plaintiffs have sustained any actual injury as a result of defendants' negligence.

Because we conclude that the plaintiffs have already sustained injury by virtue of having to litigate issues which, but for defendants' negligence, would have been resolved and that the outcome of the litigation with Kathleen is relevant only to the *amount* of plaintiffs' damages, not to the *fact* of their injury, we reverse the judgment and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In 1989, Harold retained defendants to assist and advise him in connection with certain inter vivos transfers of wealth to his daughters, the plaintiffs herein, and for the benefit of his grandchildren, and in general to prepare an estate plan for him and his issue. At the time, virtually all of Harold's wealth, including real property interests, was held in the name of a business which he had previously inherited and then controlled, the Wilshire Ranch Company (WRC). This fact was known to the defendants.

---

[1] Plaintiffs have sued not only in their individual capacity but also as the trustees of their respective children's trusts and as co-executors of Harold's estate. Harold was alive at the initiation of this action and was a named plaintiff. However, he passed away prior to the filing of the second amended complaint, a fact which is alleged in that pleading.

[2] Harold's spouse, Kathleen Caballero, is his second wife and is not the mother of plaintiffs.

[3] The facts which we recite are taken from the second amended complaint which is the operative pleading before us. As we are required to do, we assume the truth of these allegations.

Harold informed the defendants that he wanted his interest in WRC to pass to his issue with a minimum loss due to taxation and estate administration expense. Harold wanted to ensure that in his senior years, he would have the peace of mind and inner calm which would flow from the knowledge that his children, and their children, would be taken care of financially to the greatest extent he could accomplish.

Defendants claimed to have expertise in estate planning matters and they agreed to undertake the estate planning activities desired by Harold. In exchange, Harold agreed to pay, or cause to be paid, the legal fees charged by defendants. Defendants advised Harold that in order to accomplish his goals he should make certain gifts of interests he held in WRC. Relying upon the advice of defendants, he did so in late 1989 and early 1990. Under the plan crafted by defendants, Harold also sold certain interests in WRC to the plaintiffs.

Throughout this time, Harold was married to Kathleen who was not the mother of his children or the grandmother of the grandchildren for whom he wished to provide. Indeed, Kathleen had adult children of her own through a prior marriage. She also had substantial assets of her own which she either inherited or otherwise obtained prior to her marriage to Harold, and even had her own attorneys. These facts were known to defendants. At the time the estate plan was being implemented by the defendants, Kathleen was lucid and would have been willing to execute a written agreement which reflected her consent to the aforesaid gift and sale transactions. In other words, she was then perfectly willing to document her acknowledgment that the interests being transferred were Harold's sole and separate property or at least that she waived any community interest therein.

All of the documentation in connection with the transaction was prepared by defendants, and Harold and the plaintiffs signed such documents as defendants directed them to sign to effectuate the transactions. Although there was no negligence in the drafting of the documents actually prepared by the defendants, they failed to obtain or to advise Harold or the plaintiffs to obtain the written consent or acknowledgment of Kathleen, and the gift, sale and transfer transactions closed in the absence of any such written confirmation. The failure of the defendants to obtain the readily available evidence of Kathleen's consent to those transactions, or acknowledgment as to the separate nature of the property involved, was below the standard of care in the community and constituted negligence by the defendants. In short, the defendants breached their duty of due care by failing to secure Kathleen's consent prior to the time that she fell ill and became mentally incompetent to give it.

Harold caused approximately $50,000 to be paid to the defendants from WRC for their advice and legal work in connection with the estate plan devised by them. His estate—the estate he was passing to his issue and grandchildren—was diminished to that extent. In connection with the transaction, Harold also caused several thousand dollars to be paid from WRC to a business appraiser so that the transaction could receive approval from taxing authorities. This also diminished the estate he was passing to his children and his grandchildren. These expenditures would not have been incurred but for the transaction conceived and carried out by defendants. The total paid in 1989 and 1990 by Harold exceeded $100,000.

Three years after the transfers, on March 12, 1993, Harold was served with a family law action which sought, inter alia, to set aside the 1989 and 1990 transactions and to hold Harold, WRC, and the plaintiffs liable for a sum of money equal to Kathleen's purported community property interest in WRC and its assets. The action was filed on Kathleen's behalf by her children from a prior marriage. The children sued in Kathleen's name, she having lost her mental capacity due to illness and age. Kathleen's children alleged in the family law action that the property which was transferred by Harold was in fact the community property of Harold and Kathleen. In addition, other litigation also ensued in 1993 in the probate court where the parties conducted extensive discovery into issues relating to, inter alia, the nature and character of the transferred property and any oral or written agreements Kathleen may have made with Harold regarding her interest in such property. These two separate proceedings are hereafter referred to collectively as the "pending litigation."[4]

Had defendants obtained the properly acknowledged and witnessed consent of Kathleen to the 1989 and 1990 transactions, her children could not have prosecuted the family law action, or would have lost summarily on the issue of the character of the property transferred, or would have been willing to dismiss the action at a time when the attorneys fees would have been insubstantial. In other words, a written consent signed by Kathleen would have either prevented the litigation or brought it quickly to an end at little expense. This was all reasonably foreseeable to the defendants in 1989 and 1990.

Plaintiffs filed this action on March 14, 1994, which was within one year of their becoming aware that the pending litigation had been filed for Kathleen by her children. However, as there were then active settlement negotiations which might have concluded that litigation, plaintiffs did not

---

[4]We have previously had occasion to consider some of the issues raised in this family dispute. (See *In re Marriage of Caballero* (1994) 27 Cal.App.4th 1139 [33 Cal.Rptr.2d 46].)

serve the complaint on defendants. Ultimately, those negotiations proved unsuccessful and so plaintiffs amended their complaint and served a first amended complaint on defendants in April of 1995. Defendants demurred, primarily on the ground that plaintiffs' complaint was premature. That demurrer was sustained by the trial court on June 12, 1995, with leave to amend.

Harold became very depressed about the expense of the pending litigation and the impact it was having on his plans and desires to provide for his children and grandchildren. He required hospitalization in 1994 and 1995 and died on May 2, 1995.[5] Thus, during the last two years of his life, and up to and including the day of his death, Harold did not know whether his children and grandchildren would receive the estate which was the subject of the defendants' estate planning efforts in 1989 and 1990 or whether the entire transaction would be set aside and substantial funds paid out to Kathleen and her children, despite his long-standing agreement with Kathleen that WRC and all of its assets were his sole and separate property.

Plaintiffs filed their second amended complaint on July 12, 1995. It alleged three causes of action: (1) legal malpractice, (2) negligent failure to secure available evidence and (3) breach of contract. The essence of the claim against the defendants, as alleged in this pleading, is that defendants either (1) failed to recognize the need to obtain Kathleen's written consent to the various estate planning gifts, transfers and sales which they had recommended, which consent she was *then* ready, willing and able to give or (2) the defendants did recognize the need for such consent but failed to follow through and obtain it. Either way, plaintiffs allege, defendants' actions fell below the standard of care and breached their agreement with Harold.

As a consequence of defendants' alleged breaches of duty and contract, plaintiffs claim to have suffered the following "actual injuries" and damages: (1) their payments of over $100,000 to defendants for legal services which have proved to have no value; (2) their payments to an appraiser for a plan which has not accomplished one of its main purposes; (3) attorney fees incurred in the pending litigation which they have paid to their counsel, (4) fees ordered paid to counsel for Kathleen in the family law portion of the

---

[5] As already noted, Harold had been a named plaintiff in the original and first amended complaints filed in this matter. Upon his death, plaintiffs, as co-executors of his estate, succeeded to his interest and position in this action. Whether that change was procedurally accomplished as required by statute is an issue which was raised below by the defendants. However, it is not before us in this appeal and we need not address it. Indeed, the order of dismissal signed by the trial court expressly states that plaintiffs are "deemed" to have sued not only in their individual and trustee capacities, but also as the personal representatives of Harold's estate. Whatever issue remains on the point can be resolved on remand.

litigation; and (5) the medical expenses sustained by plaintiffs as a consequence of Harold's hospitalization and medical care brought on by the depression and great emotional distress suffered by him in 1994 and 1995, which was caused by the pending litigation with Kathleen and her children.

Defendant filed a demurrer to plaintiffs' second amended complaint, again asserting that the action was premature. They argued that whether or not plaintiffs suffered any "actual injury" could not be determined until the pending litigation with Kathleen and her children was resolved. The trial court, relying on the Supreme Court's decision in *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] (*Niles*), agreed and sustained defendants' demurrer without leave to amend. The court reasoned that until a malpractice plaintiff discovers an attorney's malpractice *and* suffers actual injury, any action for malpractice is premature. Since plaintiffs could not make an allegation of such injury until the conclusion of the pending litigation, their action was premature and could not be amended to state any cause of action. The trial court then entered an order of dismissal *without* prejudice.

Plaintiffs filed this timely appeal.

## ISSUE PRESENTED

■ The issue before us is a simple one. Where an attorney has been hired to prepare, document and put into effect a client's estate plan, but negligently fails to obtain an available spousal consent to the gifts and transfers made in accordance with that plan and, as a result, those gifts and transfers are subsequently attacked in litigation filed by the spouse or her heirs, what event triggers the client's "actual injury" and the accrual of a claim for malpractice?

Predictably, the parties have differing views on the question. Plaintiffs claim that they suffered actual injury when the pending litigation was filed by Kathleen and her children. It was at that moment that the absence of the consent condemned plaintiffs to expensive and prolonged litigation. Plaintiffs contend that they have (1) incurred substantial legal fees in defending the plan (including attorney fees for the cost of Kathleen's representation in certain of the family law proceedings), (2) lost the value of the substantial sums paid to defendants and others to set up and put into effect the estate plan and (3) suffered other general and special damages. Defendants, on the other hand, argue that only if the pending litigation results in a judgment adverse to plaintiffs' claims as to the status and character of Harold's property will they suffer *any* actual injury. Only then will it be

appropriate to claim that they have suffered a loss as a result of defendants' negligence. If they prevail in the pending litigation, then defendants' legal work will have been vindicated and plaintiffs will have sustained no actionable loss. In short, defendants contend that this case, like *Niles*, involves a disputed claim of negligent draftsmanship the liability for which will be resolved by the pending litigation. Plaintiffs counter that it does not matter how the pending litigation is resolved, they have suffered an actual injury either way. Its outcome will only determine the *amount* of their loss.

## DISCUSSION

### 1. *Standard of Review*

This case comes to us on an appeal from the sustaining of a demurrer without leave to amend. ■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Irrespective of the labels attached by the pleader to any alleged cause of action, we examine the factual allegations of the complaint, to determine whether they state a cause of action on *any* available legal theory. (*Ellengberger* v. *Espinosa* (1994) 30 Cal.App.4th 943, 947 [36 Cal.Rptr.2d 360]; *Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) If they do, then the trial court's order of dismissal must be reversed. (*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].)

■ In this case, the factual allegations of plaintiffs' second amended complaint clearly allege (1) the formation of the attorney-client relationship between the defendants and Harold, (2) the specific estate planning tasks which defendants agreed to undertake and the goals which they advised Harold could be achieved and (3) the defendants' negligence in carrying out the promised professional services; that is, their failure to meet the standard of care. All of this is alleged and must be assumed by us to be true. Also alleged and assumed to be true are the factual bases for plaintiffs' claim of actionable injury and that defendants' negligence was a legal cause thereof.

This leaves us with the only issue presented by this appeal. Do these admitted factual circumstances establish an actual injury to plaintiffs so that a cause of action for legal malpractice has accrued even though the pending litigation has not yet been resolved?

### 2. Rules Governing Accrual of an Action for Attorney Malpractice

In *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] (*Budd*), our Supreme Court outlined the general principles governing the accrual of a cause of action for malpractice. "Code of Civil Procedure section 312 provides, 'Civil actions, without exception, can only be commenced within the periods prescribed in this title, *after the cause of action shall have accrued,* unless where, in special cases, a different limitation is prescribed by statute.' ▮ The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.] [¶] If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. Prosser states the proposition succinctly, 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.' [Citation.] [¶] The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citation.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (*Id.,* at pp. 200-201, fn. omitted, italics in original.)

In *Budd, supra,* 6 Cal.3d 195, the court reversed a summary judgment granted in favor of an attorney who had negligently failed to plead an available capacity defense for his client who thereafter, with new counsel, was unable to undo the harm and suffered a judgment for damages on a contract claim for which he was not personally responsible. The trial court had held that the cause of action accrued and the statute commenced to run at the time of the negligent act and since the client's malpractice action was

filed more than two years later, it was barred by the then applicable statute of limitations.[6] In reversing, the *Budd* court made it clear that the cause of action did not accrue nor did the statute commence to run until the client suffered some appreciable damage. This would include (1) the attorney fees paid to the negligent attorney (to the extent that they exceeded the value of the legal services rendered), (2) attorney fees paid to new counsel hired to extricate the client from the problem created by the first attorney's negligence and (3) the amount of the adverse judgment which was suffered due to the negligence. However, the determination of when such damages were first in fact sustained raises a question of fact (*Budd, supra,* 6 Cal.3d at p. 202) which, if there is a material dispute on the point, would preclude summary judgment.

The accrual rule of *Budd* was later codified in Code of Civil Procedure section 340.6.[7] However, nothing in the legislative history of that statutory change in any way suggests that the Legislature intended to alter the second part of that rule: "[I]n legal malpractice actions statute of limitations issues, including injury, are at base factual inquiries." (*Adams* v. *Paul* (1995) 11 Cal.4th 583, 588 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (*Adams*).)

A narrow exception to the general accrual rule of *Budd* was made by the Supreme Court in those cases where the alleged malpractice involved a claim that an attorney had negligently prepared legal documents which resulted in litigation testing their efficacy. In *Niles, supra,* 9 Cal.4th 245, the court held that in transactional malpractice cases, *in which the adequacy of the documentation is the subject of the dispute,* the action accrues on entry of an adverse judgment, settlement, or dismissal of the underlying action, since it is at this point that the client "has discovered the fact of damage *and* suffered 'actual injury' due to the" defendant's malpractice. (*Id.* at p. 258.) The court cautioned, however, that its holding was a narrow one and was "limited to the circumstances typified by this case." (*Ibid.*)

In *Niles*, the attorney had negligently prepared loan documents which resulted in ITT having to defend the adequacy of that documentation in an adversary bankruptcy proceeding brought by the debtor to whom it had

---

[6]At that time, the statute of limitations applicable to attorney malpractice was two years. (Code Civ. Proc., § 339, subd. 1.) That was subsequently changed by the Legislature when it adopted Code of Civil Procedure section 340.6. (See fn. 7, *post.*)

[7]Code of Civil Procedure section 340.6 provides, in relevant part (§ 340.6, subd. (a)(1)): "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury . . . ."

loaned the money.[8] Ultimately, that adversary proceeding was settled adversely to ITT. Its malpractice action was filed less than two months after the settlement but over two years after commencement of the adversary proceeding. Niles (the defendant attorney) argued that ITT first suffered appreciable actual injury when it incurred legal fees to defend the loan documentation in that adversary proceeding and so the malpractice cause of action accrued at that time and the statute of limitations commenced to run. As a result, he argued, the action was time-barred. The trial court agreed and granted summary judgment. The Supreme Court reversed, holding that until the efficacy of the loan documentation could be tested in the bankruptcy litigation brought by the debtor it would not be known whether any injury suffered by ITT (e.g., attorney fee expenditures) would be due to the attorney's malpractice. Until that time it could not be determined if an "actual injury" had occurred. In short, the determination of whether or not there had been *any* actual injury was *dependent* on the outcome of the litigation. Thus ITT's attorney fee expenses did not constitute such actual injury (although they might be included in ITT's total damages if the litigation were lost or adversely settled as it in fact was). Therefore, the action did not accrue or the statute commence to run until the date of the adverse settlement; thus, ITT's action was timely filed.

Defendants rely heavily on *Niles* to support their argument that plaintiffs' action has not yet accrued because plaintiffs have not yet suffered any "actual injury." Analogizing to *Niles*, defendants argue that their alleged failure to obtain Kathleen's consent to the implementation of Harold's estate plan was at most a flaw in their documentation of Harold's estate plan and whether or not it will make any difference to plaintiffs will depend upon how the pending litigation is resolved. Until then, the existence of an "actual injury" *due to their malpractice* cannot be determined. As already noted, the trial court agreed. We do not.

### 3. *The Pending Litigation Resulting From Defendants' Negligence Is Not About the Efficacy or Adequacy of Defendants' Estate Plan Documentation*

 The issue raised in the pending litigation by Kathleen and her children does not involve the adequacy of defendants' estate plan documentation (e.g., its completeness as to formalities, its compliance with law, its

---

[8]The issue presented in that litigation was whether the attorney's documentation of the loan was sufficient to preserve ITT's expected first security position with respect to certain "machinery, equipment, furniture, fixtures, inventory, accounts receivable, and leasehold improvements" which the debtor had offered as collateral but which secured position the debtor challenged after it filed for bankruptcy. (*Niles, supra,* 9 Cal.4th at pp. 248-249.)

specificity as to assets conveyed, its description of persons to be benefited or its usefulness in avoiding adverse tax consequences). Indeed, plaintiffs have alleged and conceded that defendants were *not* negligent in the drafting of the estate plan itself. The issue in the pending litigation relates solely to the community or separate status of the property which was the subject of the estate plan. Plaintiffs allege that in 1989 and 1990 Kathleen did not contest Harold's view that all of his interest in WRC was his sole and separate property. In fact, plaintiffs allege that Kathleen was then willing to sign a consent to the various gifts and transfers needed to implement the estate plan and thereby expressly waive any claim of community property which she might have otherwise asserted.

Thus, when defendants failed to obtain that consent, their negligence made possible litigation asserting a community property claim which could not have otherwise been raised. It is the validity of that claim now raised by Kathleen's children on her behalf which is the actual issue presented in the pending litigation.

There are undoubtedly legal malpractice cases where the underlying dispute focuses on the accuracy or inaccuracy of an attorney's written work, and where the client's victory in such litigation is ipso facto exoneration of the lawyer. *Niles, supra,* 9 Cal.4th 245, would have been such a case had ITT prevailed in the underlying litigation, thus vindicating the efficacy of the attorney-drafted loan documentation. The present case, however, is not in that category. The language or contents of the estate plan documents are in no way being tested in the pending litigation. The issue here is not "are the documents valid to transfer Harold Caballero's estate to his heirs?" but rather "what assets are properly included in a listing of Harold Caballero's estate?" The charge of negligence here is based on the attorney's failure to obtain from a spouse written confirmation of a fact then known: that the assets were indeed Harold's, or if not, that Kathleen was willing to so treat them.

The effect of the failure to obtain the consent and waiver was not to change the nature of the assets—they were whatever they were, community or separate. The failure merely allowed the foreseeable to occur: Kathleen, due to mental incapacity, became unable to confirm her view that she and Harold, at the time of the transactions, saw the property as Harold's. Later, Kathleen's children, claiming that Harold had taken advantage of their mother[9] and faced with no express and permanent memorialization to establish Harold's ownership of the disputed property, commenced litigation on her behalf. In other words, the purpose for obtaining the waiver from

---

[9]See, for example, *In re Marriage of Caballero, supra,* 27 Cal.App.4th at pages 1143-1144 and 1146-1148.

Kathleen would not be to make the transfer "valid" or "effective," but rather to render unlikely (or at least easy-to-defeat) subsequent litigation attacking Harold's implicit claim to sole and separate ownership of the assets to be conveyed. Where, as here, the purpose of a lawyer's retention is to place the client and his or her intended beneficiaries in a posture of quiet ownership of assets, and the lawyer negligently fails to obtain a simple written consent which would all but preclude costly litigation, *the mere fact of such litigation is the unwanted consequence.* The litigation represents the loss of the bargained-for benefit; the litigation itself is the event which constitutes damage. (See *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645].) It is not (as in *Niles*), a means of establishing whether there was any injury attributable to attorney malpractice.

### 4. *The Attorney Fees Incurred by Plaintiffs in Defending the Pending Litigation Constitute Recoverable Damages*

In our view, the case made by plaintiffs can be simply characterized. Plaintiffs hired and paid defendants to obtain and document a waiver by Kathleen of any claim of a community property interest she might have in Harold's separate estate. She was in 1989 and 1990 willing to do this. Defendants failed to obtain or even solicit such a waiver. As a direct result, plaintiffs are now engaged in expensive litigation over whether Kathleen in fact had any such community property interest. This lawsuit would not have been filed had the consent and waiver been obtained (or, if filed, it would have been summarily resolved). Contrary to defendants' arguments, the outcome of the pending litigation will not determine whether or not plaintiffs have suffered actual injury, it will only determine the *amount* of that injury. If plaintiffs prevail in the pending litigation, their loss will be limited to their attorney's fees and litigation costs. If they lose, they will have sustained not only those losses, but also the value of Harold's property which will have to be diverted to Kathleen and her children. It is only this latter event which we will not know until the pending litigation is resolved. That plaintiffs have already incurred substantial attorney fees in defending the pending litigation is established fact. Indeed, the estimates cited by plaintiffs' brief reflect that amount is in excess of $500,000 and counting. These fees are clearly damages resulting directly from the alleged negligence of defendants.

Under California law, it is a well-established principle that attorney fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages. (*Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at pp. 620-621.) We see no reason not to apply this principle to legal malpractice actions. Defendants' alleged malpractice certainly would amount to a tort which has resulted in plaintiffs' having to defend the pending litigation initiated by Kathleen.

In *Prentice,* plaintiffs retained defendant title guaranty corporation to act as an escrow holder in connection with a sale of property. Due to defendant's negligence, plaintiffs were required to incur attorney fees in bringing a quiet title action against the purchaser in order to protect their interests. ▮ The California Supreme Court made a clear pronouncement, which it has never overruled or undermined: "A person who through the tort of another has been required to act in the protection of his interests by bringing or *defending* an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice v. North Amer. Title Guar. Corp., supra,* 59 Cal.2d at p. 620, italics added.) In a subsequent opinion, the Court of Appeal has explained the doctrine further : "The theory of recovery is that the *attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action.* In such cases there is no recovery of attorney fees qua attorney fees. . . . [¶] [N]early all of the cases which have applied the doctrine involve a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorney fees and the person seeking compensation for those fees. [Citations.]" (*Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310 [270 Cal.Rptr. 151], italics added.)

In *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901], the defendant attorneys negligently misrepresented the status of the partners of a partnership which they represented. As a result, the plaintiff, who had relied on that representation, was required to sue those partners in the hope of establishing that their partnership was a general rather than a limited partnership and sought the attorney fees and costs incurred in that action as one item of his out-of-pocket loss. Plaintiff would only suffer substantial damages if the outcome of the suit against the partners established that they were only limited partners. Nonetheless, the court recognized that "*substantial legal expense will be incurred to secure this determination, even if that determination is favorable to him.* Such legal expense is neither remote nor speculative, but must of necessity be incurred by plaintiff to make him whole." (*Id.* at p. 112, italics added; see also *Vanguard Recording Society, Inc. v. Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 419 [100 Cal.Rptr. 826].)

▮ Thus, when the defendants' negligence resulted in the filing of the pending litigation, plaintiffs were required to defend their position that Harold's interest in WRC was his sole and separate property. They have incurred several hundred thousand dollars in expense in conducting that defense. This gave them an immediate cause of action against the defendants under the *Prentice* doctrine. (See *Prentice v. North Amer. Title Guar. Corp., supra,* 59 Cal.2d 618.)

## 5. *In the Circumstances of This Case the Resolution of the Question of Actual Injury Cannot Be Resolved as a Matter of Law*

In *Adams, supra,* 11 Cal.4th 583, the court made it clear that the *Budd* holding, nearly 25 years before, was the proper one with respect to a determination of actionable harm in a legal malpractice case. Noting that *Niles* involved a very narrowly drawn circumstance, was not a paradigm and certainly "did not articulate a 'rule for all seasons' " (*Adams, supra,* at p. 588), the court stated, ". . . depending upon the particulars, actionable harm may occur at any one of several points in time subsequent to an attorney's negligence. Hence, as with other causes of action, the determination is generally a question of fact." (*Ibid.*)

Although *Adams* is a "missed statute" case, we see no reason why its ruling and reasoning are not fully applicable here.[10] ■ Its significance in this case is that it underscored the very narrow application of *Niles* and reaffirmed four principles taken directly from the *Budd* decision: (1) determining when a plaintiff in a legal malpractice case has sustained actual injury is predominantly a factual rather than a legal determination (*Adams, supra,* 11 Cal.4th at pp. 585-586; *Budd, supra,* 6 Cal.3d at p. 202); (2) absent the narrow circumstances presented by *Niles,* the determination of actual injury does not depend upon or require a prior adjudication, judgment, or settlement (*Adams, supra,* at pp. 591-592; *Budd, supra,* at pp. 197-204); (3) an injury is not "actual" if it causes only nominal damages, speculative harm, or the threat of future harm (*Adams, supra,* at p. 589; *Budd, supra,* at p. 200); and (4) it is the fact of injury and not the amount of injury that is the relevant consideration (*Adams, supra,* at p. 589; *Budd, supra,* at p. 201).

As Justice Kennard points out in her concurring opinion in *Adams,* this decision undercuts one of the fundamental holdings of *Niles,* that "actual injury" depends upon the timing or outcome of a prior adjudication, judgment or settlement with a third party. (*Adams, supra,* 11 Cal.4th at pp. 595-596 (conc. opn. of Kennard, J.).) That, of course, is a central part of defendants' argument here. However, that rule only has application in that narrow circumstance where the fact of the attorney's negligence will itself be determined in such prior litigation. (See *Van Dyke v. Dunker & Aced* (1996) 46 Cal.App.4th 446, 454-455 [53 Cal.Rptr.2d 862].) As we have pointed out, that is not the case here. The outcome of the pending litigation is relevant only to the *amount* of plaintiffs' damages. Plaintiffs have sustained actual injury whether they win or lose.

---

[10]Indeed, the defendants' failure to timely obtain Kathleen's consent to the transfers and gifts contemplated by Harold's estate plan is very analogous to the "missed" opportunities malpractice presented in both *Adams* and *Budd.*

In *Foxborough* v. *Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525], a very similar problem was presented. An attorney's negligence resulted in the client's loss of an unrestricted right to annex subsequent development of a retained parcel to an existing apartment complex. The court held that the client suffered actual injury when the three-year period during which an automatic annexation could have occurred expired. As a result, the client was required to commence litigation to obtain the desired annexation. This was a more onerous, expensive, and unpredictable task and it was the very problem that the attorney had been hired to avoid. The court stated, ". . . when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury *regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred.* [Citations.] This approach promotes the legislative goal of requiring diligent prosecution of known claims to provide finality and predictability in legal affairs, and to ensure that claims are resolved while evidence remains reasonably available and fresh. [Citation.]" (*Id.,* at p. 227, italics added.)

Whether plaintiffs have in fact sustained the damages which they claim, and when, are matters which they will have to prove. We hold only that such damages, in the context of this case, if proven, would constitute an actual injury for purposes of the accrual of their claim for attorney malpractice. Thus, their action is not premature.[11] The trial court's order sustaining defendants' demurrer was error.

### Disposition

The judgment is reversed. Plaintiffs shall recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

---

[11]However, since it does appear that the full extent of plaintiffs' damages cannot be determined until the resolution of the pending litigation, the trial court has the inherent authority to stay this action pending that event. (See *Adams, supra,* 11 Cal.4th at p. 593 and cases cited thereat.)